[No. B008557. Second Dist., Div. Five. July 19, 1985.]

ALFONSO MORA AMEZCUA et al., Plaintiffs and Appellants, v. CITY OF POMONA, Defendant and Respondent.

**COUNSEL**

Moore & Brown, Lee Brown, Lawson & Hartnell, Carroll M. Lawson and Raymond N. Haynes for Plaintiffs and Appellants.

Patrick J. Sampson, City Attorney, and William E. Dennis, Deputy City Attorney, for Defendant and Respondent.

OPINION

**HASTINGS, J.**—Plaintiffs/appellants Alfonso Mora Amezcua and Gustavo Mora Amezcua doing business as Delicias de Michoacan (appellants) appeal the denial of their motion for preliminary injunction.

Appellants are in the business of manufacturing and selling ice cream bars and popsicles (paletas)[1] in cities and towns throughout California. These items are sold from nonmotorized pushcarts along the public streets. Sometime in July 1981, appellants sought a license to sell popsicles from pushcarts from respondent City of Pomona (the City). In September 1981, the City passed ordinance No. 3085 prohibiting the sale of food or beverage from nonmotorized pushcarts. On the basis of this ordinance, appellants were denied their license.[2]

On September 13, 1984, appellants filed a complaint which sought to enjoin the City from applying the prohibition required by the ordinance. The complaint alleged that the ordinance violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution in that it created two classes of peddlers: one using motor-driven vehicles and one using pushcarts. They argued that there was no reasonable justification for this distinction; that its arbitrariness evidenced discrimination against peddlers using pushcarts. This discrimination, appellants urged, deprived them of their livelihood without due process of law. The second cause of action alleged that the City passed this ordinance to discriminate against appellants who are of Mexican ancestry and whose products, in the Mexican culture, are traditionally peddled from pushcarts. In a supplemental points and authorities, appellants argued that the City had no authority to regulate public streets as the state Vehicle Code alone had this power.

The City countered with the assertion that it passed this ordinance because pushcarts are slow and, as such, are hazardous to motorists and pushcart

---

[1]A "paleta" is a frozen dessert made from a Mexican recipe, enjoyed primarily by people of Mexican ancestry.

[2]Ordinance No. 3085 states: "Except as otherwise provided in this section, no person shall park any motor vehicle from which goods, wares, merchandise or food are sold, displayed, solicited or offered for sale or bartered or exchanged, on any portion of any street within the City, except on the bonafide request of a purchaser, a vendor may stand for a period not to exceed ten minutes at any one time. No person shall use a non-motorized vehicle to sell goods, wares, merchandise or food on city streets or sidewalks."

Ordinance 3085 was repealed in 1983 and replaced by ordinance 3240, which states: "No person shall park any motor vehicle from which goods, wares, merchandise or food are sold, displayed, solicited or offered for sale on any city park at any time or on any portion of any street within the city for more than ten minutes at any location. No person shall use a non-motorized vehicle to sell goods, wares, merchandise or food on city streets, sidewalks or parks."

operators alike; impede traffic, particularly on arterials; are awkward to maneuver; are unrefrigerated; and are generally out of date.[3] These reasons, the City argued, constitute the requisite rational basis to sustain the validity of the pushcart prohibition. In its answer to the complaint, the City generally denied appellants' allegations regarding the racially discriminatory basis for the ordinance. However, in its points and authorities, the City offered no counterarguments to this assertion.

The court denied the injunction. Its minute order dated October 15, 1984, offers the following rationale: "Motion for Preliminary Injunction is DE-NIED. The Respondent has articulated a rational basis, albeit slight, for the ordinance. The Court questions the wisdom of the city's legislative policy and suggest that the City Council might consider amending the ordinance to ban push-carts on four lane arterial streets only. The Court will not invalidate a legislative enactment as long as a rational basis is articulated for its enactment."

DISCUSSION:

 ■ "The grant or refusal of a preliminary injunction is, generally speaking, within the discretion of the trial court, and its order may be reversed on appeal only if abuse of discretion is shown." (*Gosney* v. *State of California* (1970) 10 Cal.App.3d 921, 924 [89 Cal.Rptr. 390].) We find such abuse only when the decision of the court below exceeds the bounds of reason or contravenes the uncontradicted evidence. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].)  ■ In the instant case, to resolve whether the court reasonably exercised its discretion we must determine whether its conclusion that the city's anti-pushcart ordinance was rationally related to its stated purpose is supported by the evidence.

 ■ " 'The courts will not nullify laws enacted under the police power unless they are manifestly unreasonable, arbitrary or capricious, having no

---

[3]The declaration of the Director of Public Works for the City listed the reasons for the pushcart prohibition as follows: "1. Pushcarts within any four lane arterial street in Pomona's urban setting would present a hazard to motorists and pushcart persons alike due to differences in their travel speed. [¶] 2. With daily traffic volumes of up to 30,000 vehicles per day and driver attention focused on vehicles within the roadway, pushcarts on the shoulders would be susceptible to a high degree of accident vulnerability, particularly at intersections. This would be true also of one pushing the cart. Pushcarts do not have safety lighting, reflectors, nor horns. [¶] 3. Allowing pushcarts upon a sidewalk would not be realistic because it would essentially require the entire sidewalk width to maneuver. Our standard residential sidewalk width is 5 feet. In commercial areas, sidewalks usually range 8 to 12 feet in width, but are burdened with power poles, street light standards, mail boxes, fire hydrants, street trees, signs and the like to cut effective widths in half. [¶] 4. It would appear pushcarts would not represent undue traffic problems on low volume local streets. However, arterial streets must be traversed in order to reach local streets."

real or substantial relation to the public health, safety, morals or general welfare. [Citations.]'" (*Barenfield* v. *City of Los Angeles* (1984) 162 Cal.App.3d 1035, 1040 [209 Cal.Rptr. 8].) ▮ We conclude that the City's ordinance is constitutional.

The declaration of the Director of Public Works for the City, quoted in footnote 3, *supra,* articulates a rational basis for the pushcart prohibition. It demonstrates that the City's arterial streets experience a traffic volume of up to 30,000 vehicles per day; that pushcarts might distract a motorist, causing an accident; that pushcarts, lacking safety reflectors and horns, are vulnerable when operating on streets with heavy traffic volume; that should pushcarts operate on sidewalks, the sidewalks would become overcrowded, forcing pedestrians onto the street; and that, though local streets might be an appropriate place for pushcarts, a safety hazard still exists because the cart would have to traverse an arterial street to get to the local street. The City's concern for the safety of the city street and sidewalk user as well as the pushcart operator is addressed by this ordinance. The fact that we might have devised a different ordinance is of no importance. ▮ "'A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body if there is any reasonable justification for the latter's action.'" (*Id.,* at p. 1040.)

▮ Appellants' equal protection argument is based partly on their assertion that pushcarts are singled out when motorized carts can be equally as hazardous as the pushcarts. It has long been recognized that legislative bodies may impose restrictions at whichever rate they choose. (*City of New Orleans* v. *Dukes* (1976) 427 U.S. 297, 303 [49 L.Ed.2d 511, 516, 96 S.Ct. 2513].)

▮ Appellants urge that this ordinance requires strict scrutiny because it invidiously discriminates against those of Mexican ancestry. The trial court did not address this contention. We shall, only to say that we find nothing in the record to support this assertion.

During oral argument, appellants cited cases which they purport require our strict scrutiny of this legislation. Each was a case involving a statute which flagrantly interfered with a person's fundamental right and were manifestly unreasonable.[4] These cases are clearly distinguishable. The City has

---

[4]*Truax* v. *Raich* (1915) 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7], found unconstitutional a state statute which required that 80 percent of a firm's employees be either qualified electors or native born Americans; *Portnoy* v. *Hohmann* (1942) 50 Cal.App.2d 22 [122 P.2d 533], found constitutionally unreasonable a statute which prohibited distribution of street photographer's handbills but allowed all other types of handbills to be disseminated; *Liggett Co.* v. *Balderidge* (1928) 278 U.S. 105 [73 L.Ed. 204, 49 S.Ct. 57], not only is inapplicable but has been overruled by *North Dakota Pharmacy Board* v. *Snyder's Stores* (1973) 414 U.S. 156 [38 L.Ed.2d 379, 94 S.Ct. 407].

shown, and we concur, that this statute primarily is concerned with the safety of all the users of the city streets and sidewalks. This is indisputably within the City's purview. Moreover, the ordinance applies to *all* pushcart vendors, regardless of the product being sold or the ancestry of the vendor and vendee.[5]

■ Appellants' argument that the state Vehicle Code preempts the City's authority to regulate pushcarts on public streets is without merit. This ordinance is concerned with the regulation of business on the city streets; it is not addressing the regulation of vehicular traffic.[6] The City's power to impose such restrictions on business on the City's streets is without question. *(San Francisco Street Artists Guild* v. *Scott* (1974) 37 Cal.App.3d 667, 670 [112 Cal.Rptr. 502].)

We also reject appellants' assertion that this ordinance is, in fact, an attempt by the City to control a public nuisance. As such, they argue, it is void because the regulation of public nuisance has been preempted by the state. There is no indication in the record either that this was the basis for the City's enactment of this ordinance or that this argument had been presented to the trial court for consideration. Not only has it been waived, but we find it to be meritless for the reasons discussed above.

The denial of appellants' motion for a preliminary injunction against the City is affirmed.

Feinerman, P. J., and Eagleson, J., concurred.

Appellants' petition for review by the Supreme Court was denied October 2, 1985. Bird, C. J., was of the opinion that the petition should be granted.

---

[5]In view of the fact that appellants admit in their respective declarations that they currently operate motorized pushcarts in the City, their assertion that they are being deprived of their livelihood is dubitable.

[6]In fact, the Vehicle Code is silent regarding the type of pushcart involved in this case.