[No. B067188. Second Dist., Div. Seven. Apr. 28, 1994.]

JUAN XILOJ-ITZEP et al., Plaintiffs and Appellants, v.
CITY OF AGOURA HILLS et al., Defendants and Respondents.

COUNSEL

Robin S. Toma, Paul L. Hoffman, Mark D. Rosenbaum, Michael J. Ortiz, Vibiana Andrade, Thomas A. Saenz, Niels Frenzen, Edward J. Flynn and Linton Joaquin for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, Gregory W. Stepanicich, City Attorney, Anthony P. Serritella, David J. Olivas, Richard, Watson & Gershon, Rochelle Browne and Kevin G. Ennis for Defendants and Respondents.

## OPINION

**WOODS (Fred), J.—**

## I.

## INTRODUCTION

This appeal arises from the unsuccessful attempt of plaintiffs in the trial court to preliminarily enjoin enforcement of defendant City of Agoura Hills' (City) ordinance which regulates solicitation from persons traveling in vehicles on City streets (Ordinance).

## II.

## CONTENTIONS

Appellants contend the Ordinance was adopted to prevent them from seeking daywork in the City and prevents them from congregating on City sidewalks in violation of their First Amendment rights, the equal protection clause and the right to work.

City contends that as the Ordinance prohibits all solicitation of sales, business, contributions and work from persons travelling in vehicles on City streets, it is directed at conduct which poses a threat to public safety and the free flow of traffic on City streets, rather than speech or message. City contends that since the prohibited conduct can be determined without regard to the content of speech, the purpose of the solicitation or the identity of the solicitor and applies only to vehicle-addressed solicitation, the Ordinance suffers from no constitutional impediments and is enforceable.

The county joins in the City's contentions that the Ordinance is not facially invalid and further contends that the Los Angeles County Sheriff's Department did not engage in unconstitutional enforcement of the Ordinance.

## III.

## FACTUAL AND PROCEDURAL SYNOPSIS

The City is a small residential community with only limited commercial areas providing neighborhood services. Until recently, the City had not experienced any of the problems that have occurred in other cities on its streets or sidewalks with commercial transactions such as the vending of

food and flowers to motorists or seeking contributions or work from motorists. For that reason, it had not adopted any regulation of vehicle-addressed solicitation.

However, in late 1989 and early 1990, large numbers of men, up to 100 a day, began congregating at the intersection of Kanan and Agoura Roads in the City, apparently in the hope of obtaining daywork. The City then began receiving complaints concerning certain conduct by some of the men who were congregating near that intersection. These complaints included running out into traffic, swarming cars, distracting motorists who made sudden swerves and stops to respond to them and interfering with ingress and egress to the parking lot of the small shopping center (a Jack-in-the-Box, an International House of Pancakes, a travel agency, a Mexican restaurant, and a beauty salon) at that intersection.

There also were complaints from some of the men who sought daywork that employers failed to pay them, as well as instances of littering, fighting, drinking, public urination and defecation in the parking lot, catcalling at women and use of shopping area and nearby areas for sleeping and living encampments. There was an accident related to solicitation of work at the intersection before the Ordinance was adopted.

Mindful of the difficult economic circumstances which cause men to seek daywork and hopeful of finding solutions that would address both the needs of men seeking work and the health and safety concerns of the community, the City established an ad hoc task force and held public meetings to receive input and suggestions. Counsel for appellants and the men who congregate at the site were invited to participate. City staff members were also directed to investigate the manner in which other cities dealt with similar problems.

As a result of the initial input received at those meetings and input from City staff and the sheriff, the City established a hiring site with the help of a local property owner who donated a site near the intersection of Kanan and Agoura Roads. It opened in August of 1990 and the City provided portable toilets, drinking water and a volunteer coordinator. The City also arranged for a food truck to stop at the hiring site. However, only a few of the men obtained work through the site and large numbers of them continued to congregate in and adjacent to the shopping area at Kanan and Agoura Roads and to run into traffic, swarm cars and interfere with use of the shopping area.

The final reports of the ad hoc task force and of City staff were presented to the city council at public meetings on January 16, March 13, and March

27, 1991. Based on those reports, the City approved placement of no stopping signs in the area of the intersection as recommended by the City's traffic engineer. This was done to discourage prospective employers from illegally and dangerously swerving and stopping in response to men hailing them or running out into the street. Employers were able to use the parking lot and other areas of the street to park legally and hire a day worker.

The City also established a telephone hiring exchange in order to assist men in finding day work. Employers who need dayworkers can call to find men looking for work, and men seeking work need simply leave their name, the type of work they can do and a number at which they can be reached. If they do not have a phone, they can call in to the exchange and may do so from a pay phone. The exchange opened in April of 1991 and is still in operation. The hiring site, which had not been effective either in helping men to find work or in resolving health and safety problems during the nine months of its operation, was closed at the same time. The City found that no more than 15 out of 100 men obtained daywork in the City on any given day; this fact was true both before establishment of the hiring site and while it was in operation.

The City also adopted Ordinances Nos. 172 and 183 in March of 1991 to prohibit vehicle-addressed solicitation. The following findings were set forth in sections A through E of Ordinance No. 172:

"A. Large groups of persons congregate in areas within the City on a daily basis and solicit or attempt to solicit employment, business or contributions from the occupants of vehicles on certain city streets; and

"B. The activity of soliciting employment, business or contributions from occupants of vehicles distracts drivers from their primary duty to watch traffic and potential hazards in the road, observe all traffic control signals or warnings and prepare to move through the City's streets and intersections; and

"C. The practice of soliciting employment, business or contributions from occupants of vehicles as discussed above, impedes the flow of traffic on the streets within City, results in the delay and obstruction of the public's free flow of travel, and results in congestion and blockage of the streets, driveways to parking areas, and sidewalks when such persons approach the vehicles to negotiate with the occupants; and

"D. Distracted drivers are more prone to automobile accidents, and accidents on the public streets constitute a substantial traffic safety problem

which problem further impedes and prevents the orderly flow of traffic, is unsafe for the person engaging in the solicitation, pedestrian traffic, and the traffic generally; and

"E. The cumulative impact of this type of activity on the City's streets, highways and sidewalks on a daily basis has created a potential safety hazard, which poses a significant and substantial risk to the interest of the public in the free flow of travel in the City."

On July 24, 1991, the City replaced Ordinances Nos. 172 and 183 with Ordinance No. 91-191,[1] which is codified at sections[2] 3208 through 3210 of the Agoura Hills Municipal Code. The provisions of Ordinance No. 91-191 are similar to those adopted in March of 1991, and the City's purpose— health, safety and the free flow of traffic—in adopting the regulations remained the same. However, Ordinance No. 91-191 contained definitional clarifications.

Ordinance No. 91-191 provides:

"ORDINANCE NO. 91-191

"AN ORDINANCE OF THE CITY OF AGOURA HILLS RELATING TO THE SOLICITATION OF EMPLOYMENT, BUSINESS OR CONTRIBUTIONS OF MONEY OR OTHER PROPERTY WITHIN THE CITY, AMENDING THE AGOURA HILLS MUNICIPAL CODE AND DECLARING THE URGENCY THEREOF

"THE CITY COUNCIL OF THE CITY OF AGOURA HILLS DOES HEREBY ORDAIN AS FOLLOWS:

"*Section 1.* Article III, Chapter 2 of the Agoura Hills Municipal Code is hereby amended by amending Sections 3208 and 3209 to read:

"3208 Definitions. For the purposes of Sections 3209 and 3210, the following meanings shall apply:

"
". . . . . . . . . . . . . . . . . . . . . . . . .

"(b) 'employment' shall mean and include services, industry or labor performed by a person for wages or other compensation or under any contract of hire, written, oral, express or implied.

"(c) 'solicit' shall mean and include any request, offer, enticement, or action which announces the availability for or of employment, the sale of

---

[1]There are some references to this ordinance as No. 91-199. That is the result of a clerical numbering error in the city clerk's office which was corrected.

[2]Unless otherwise noted, section references are to the Agoura Hills Municipal Code.

goods, or a request for [funds]; or any request, offer, enticement or action which seeks to purchase or secure goods or employment, or to make a contribution of money or other property. As defined herein, a solicitation shall be deemed complete when made whether or not an actual employment relationship is created, a transaction is completed, or an exchange of money . . . takes place.

"3209 Prohibition of Solicitation in Public Right-of-Way.

"(a) It shall be unlawful for any person, while standing in any portion of the public right-of-way, including but not limited to public streets, highways, sidewalks and driveways, to solicit, or attempt to solicit, employment, business or contributions of money or other property from any person travelling in a vehicle along a public right-of-way, including, but not limited to public streets, highways or driveways.

"(b) It shall be unlawful for any person, while the occupant of any vehicle, to solicit, or attempt to solicit, employment, business or contributions of money or other property from a person who is within the public right-of-way, including but not limited to a public street, highway, sidewalk or driveway.

"*Section 2.* Article III, Chapter 2 of the Agoura Hills Municipal Code is hereby amended by adding thereto a new Section 3210 to read:

"3210 Prohibition of Solicitation in Unauthorized Locations Within Commercial Parking Areas.

"(a) No person shall solicit or attempt to solicit, employment, business or contributions of money or other property, from a location within a commercial parking area other than an area within or served by such parking area which is authorized by the property owner or the property owner's authorized representative for such solicitations. This section shall not apply to a solicitation to perform employment or business for the owner or lawful tenants of the subject premises.

"(b) For purposes of this Section, 'commercial parking area' shall mean privately owned property which is designed or used primarily for the parking of vehicles and which adjoins one or more commercial establishments.

"(c) This Section shall only apply to commercial parking areas where the following occurs:

"(i) The owner or person in lawful possession of the commercial parking area establishes a written policy which provides area(s) for the lawful

solicitation of employment, business, or contributions of money or other property, in locations which are accessible to the public and do not interfere with normal business operations of the commercial premises;

"(ii) A copy of said policy is submitted to the City Manager to be maintained in City files; and,

"(iii) The owner or person in lawful possession of the commercial parking area has caused a notice to be posted in a conspicuous place at each entrance to such commercial parking area not less than eighteen by twenty-four inches in size with lettering not less than one inch in height and not to exceed in total area, six square feet. The notice shall be in substantially the following form:

· " 'It is a misdemeanor to engage in the solicitation of employment, business or contributions of money or other property in areas of this commercial parking lot which are not approved for such activity by the property owner.' "

"*Section 3.* Section 3211 of Article III, Chapter 2 of Agoura Hills Municipal Code is hereby repealed.

"*Section 4.* If any section, subsection, sentence, clause, phrase or portion of this ordinance is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this ordinance. The City Council of the City of Agoura Hills hereby declares that it would have adopted this ordinance and each section, subsection, sentence, clause, phrase, or portion thereof, irrespective of the fact that any one or more section, subsection, sentence, clause, phrase or portion may be declared invalid or unconstitutional.

"*Section 5.* There are existing provisions in the Agoura Hills Municipal Code which regulate the solicitation of employment, business or contributions within the public right-of-way and, subject to certain requirements, in commercial parking areas. This ordinance changes the existing provisions in significant respects. Both the existing provisions and this ordinance are necessary to protect the public from traffic hazards and other dangers which may result from solicitations of employment, business and contributions in certain locations. Absent the immediate effectiveness of this ordinance, it is likely that there will be significant confusion regarding which provisions are in effect, which may result in increased traffic safety and other problems. The immediate effectiveness of this ordinance is therefore necessary to

prevent confusion as to which regulations are in effect and to protect the public safety and welfare. This ordinance is an urgency ordinance and shall take effect immediately upon adoption.

"PASSED, APPROVED AND ADOPTED this ＿＿ day of ＿＿, 1991.

"＿＿＿＿＿

"MAYOR

"ATTEST:

"＿＿＿＿＿

"CITY CLERK"

This action was not filed until after adoption of Ordinance No. 91-191 and after the City requested that the Los Angeles District Attorney's Office, which provides prosecution services to the City by contract, dismiss any prosecutions based on enforcement of the prior provisions.

While problems caused by vehicle-addressed solicitation were first brought to the City's attention by the large numbers of day workers congregating at a particular intersection, it became obvious that *all* vehicle-addressed solicitation was a problem. Thus, the Ordinance defines solicitation to include *all* offers of services, vending and seeking of contributions by *all* persons. (Ord. No. 91-191, § 3208.)

The prohibition on vehicle-addressed solicitation is set forth in section 3209, subdivision (a) and applies *only* to solicitation of persons *traveling* in vehicles: "(a) It shall be unlawful for any person, while standing in any portion of the public right of way, including but not limited to public streets, highways, sidewalks and driveways, to solicit, or attempt to solicit, employment, business or contributions of money or other property *from any person travelling in a vehicle along a public right way, including, but not limited to public streets, highways or driveways.*" (Italics added.)

Appellants and others are free to congregate on the City's sidewalks and other public areas to wait for employers and to solicit work from employers who are legally parked or have exited their cars. They are also free to solicit from businesses, residences and pedestrians. Under section 3210 they are also free to solicit in private parking lots, but parking lot owners may, by posting signs designating an area for solicitation, limit solicitation to a

particular area of the parking lot. If they do not properly designate and post such an area, solicitation is allowed in any part of the parking lot.

When the Ordinance was adopted, the City met with the Los Angeles County sheriff's lieutenant who oversees the daily operations of the Lost Hills Sheriff's Station which provides law enforcement services to the City pursuant to a statutory contract. (Gov. Code, §§ 895 and 51301.) Pursuant to that contract, the City may set policy by adopting regulations such as the one at issue in this case and request enforcement by the sheriff. The City can also determine the number of deputies and hours that will be spent on City matters and pay the sheriff accordingly. But the sheriff's deputies are the employees of the sheriff, who has the sole authority to hire, train, instruct, discipline and fire deputies and to determine how to enforce City ordinances and state law.

During the meeting with the sheriff's lieutenant, the City explained each section of the Ordinance, emphasizing that it was only vehicle-addressed solicitation that was prohibited and that persons were not prohibited from congregating in the City to seek work or from soliciting businesses, residences or pedestrians. The City further explained that the Ordinance applied to privately owned parking lots *only* to the extent the owner had properly designated an area for solicitation and that it applied to *all* solicitation, including flower and food vending, and to *all* persons of any race or ethnic origin. The City further expressly requested that the sheriff not report any persons suspected of being illegal aliens to the Immigration and Nationalization Service, and a sheriff's station watch briefing reflects that request.

Appellants allege instances of unconstitutional enforcement of the Ordinance by individual Sheriff's deputies and the owners and operators of the Jack-in-the-Box. All but a few of the allegations involve events prior to the adoption of Ordinance No. 91-191. The hearing on appellants' application for a hearing was in December of 1991. Appellants alleged no instances of improper enforcement after September of 1991.

## IV.

### DISCUSSION

A. *Preliminary Observations.*

 Appellants claim the Ordinance, on its face, violates their First Amendment rights, is discriminatory and unconstitutionally infringes their right to work. While appellants cite a multitude of cases which establish the

rules of First Amendment analysis, none of those cases concludes that an ordinance like the City's violates the First Amendment. Instead, several California and federal cases have upheld similar ordinances and explain that regulations limited to vehicle-addressed solicitation are not vague, overbroad or content based, serve a legitimate public purpose and do not violate the First Amendment. (*Welton v. City of Los Angeles* (1976) 18 Cal.3d 497, 504 [134 Cal.Rptr. 668, 556 P.2d 1119]; *Young v. Municipal Court* (1971) 16 Cal.App.3d 766 [94 Cal.Rptr. 331]; *ACORN v. City of Phoenix* (9th Cir. 1986) 798 F.2d 1260, 1268; *ACORN v. St. Louis County* (8th Cir. 1991) 930 F.2d 591, 594; *Intern. Soc. for Krishna Conscious. v. Baton Rouge* (5th Cir. 1989) 876 F.2d 494, 497 [*ISKCON*].)

Appellants imply that the Ordinance, which on its face applies equally to all person and all solicitation, is discriminatory simply because they are Latino men and Latino men have been cited for violating the ordinance. However, the courts have held such facts do not provide a basis for finding any constitutional violation. (*Amezcua v. City of Pomona* (1985) 170 Cal.App.3d 305 [216 Cal.Rptr. 37]; *Hispanic Taco Vendors of Wash. v. City of Pasco* (9th Cir. 1993) 994 F.2d 676.[3]

■ Appellants also claim, for the first time on appeal, that the Ordinance is impliedly preempted by Vehicle Code section 22520.5. "Interpretation and applicability of a statute or ordinance is clearly a question of law." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 242, p. 247.) Although "preemption" is a new theory not advanced in the trial court, we are of the opinion that this change in theory falls within the holding of *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534], since the factual situation is not open to controversy.

■ "Although this theory of recovery was not advanced by plaintiffs in the trial court, it is settled that a change in theory is permitted on appeal when 'a question of law only is presented on the facts appearing in the record. . . . ; [Citations.] The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' [Citation.] Such is not the case here." (51 Cal.2d at p. 742.)

---

[3]Appellants argued below that the Ordinance violates equal protection and substantive due process and was motivated by discriminatory motives. *Amezcua* and *Hispanic Taco Vendors* would be dispositive of those claims if they were again raised on appeal. Further, motivation is irrelevant, even in First Amendment challenges (*United States v. O'Brien* (1968) 391 U.S. 367 [20 L.Ed.2d 672, 88 S.Ct. 1673], and it is clear from the face of the Ordinance that it applies equally to all solicitors.

■ In any case, the language of Vehicle Code section 22520.5 does not support appellants' claim and *Amezcua* rejected a claim that an ordinance, like the City's, which regulates commerce on city streets and sidewalks rather than vehicular traffic, is preempted by the Vehicle Code. (*Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d at p. 311.) Further, the Vehicle Code carefully defines the terms "street," "sidewalk" and "freeway" and Vehicle Code section 22520.5 is expressly limited to freeways, freeway ramps and areas within a 500-foot radius of a freeway ramp. Vehicle Code section 22520.5 simply establishes the point where state regulation ends and local regulation may begin. A person who solicits from motorists on or within 500 feet of a freeway ramp violates state law; a person who does so on City sidewalks or streets in Agoura Hills violates the Ordinance. Thus, the Ordinance neither duplicates nor conflicts with Vehicle Code section 22520.5.

Moreover, it has long been established that a City's police power includes the power to regulate commercial activity on its streets and sidewalks. (*Loska* v. *Superior Court* (1986) 188 Cal.App.3d 569 [233 Cal.Rptr. 213]; *San Francisco Street Artists Guild* v. *Scott* (1974) 37 Cal.App.3d 667 [112 Cal.Rptr. 502]; *In re Mares* (1946) 75 Cal.App.2d 798 [171 P.2d 762].) It must be presumed that the Legislature was aware of these cases and chose not to interfere with such regulation by limiting Vehicle Code section 22520.5 to "freeways" rather than adding the terms "streets," "roadways," and "sidewalks." (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137]; *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].)

■ Appellants' final claim that the Ordinance impermissibly infringes their right to work is contrary to *Amezcua* and *Hispanic Taco Vendors.* The Ordinance, like those in *Amezcua* and *Hispanic Taco Vendors,* is simply a reasonable regulation of the time, place and manner in which an occupation can be pursued. It is well established that the right to engage in business is subject to reasonable regulation. (See *In re Maki* (1943) 56 Cal.App.2d 635 [133 P.2d 64]; *O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 159 [96 Cal.Rptr. 484].)

There is no merit in appellants' claims that the Ordinance is facially invalid, and it is well settled that a facially valid ordinance cannot be enjoined. (Code Civ. Proc., § 526; *Carson Mobilehome Park Owners' Assn.* v. *City of Carson* (1983) 35 Cal.3d 184, 195 [197 Cal.Rptr. 284, 672 P.2d 1297]; *Conover* v. *Hall* (1974) 11 Cal.3d 842, 849-850 [114 Cal.Rptr. 642, 523 P.2d 682].)

■ Nor is there any basis for the issuing of a preliminary injunction based on application of the Ordinance to appellants. As found by the trial

court, appellants have not shown a practice or pattern of unconstitutional enforcement, have not shown that there is any reason to fear continued unconstitutional enforcement, and have not shown irreparable harm. Moreover, their claims were in dispute as to unconstitutional enforcement by individual deputies.[4] In the absence of abuse of discretion, those findings must be sustained. (*Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d at p. 309.)

Moreover, a preliminary injunction based on application of a regulation is rarely justified before a trial on the merits. (*City of Santa Monica* v. *Superior Court* (1964) 231 Cal.App.2d 223, 226 [41 Cal.Rptr. 824]; *Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d at p. 309.) If any of appellants can prove that an individual deputy acted unconstitutionally in enforcing the Ordinance, that appellant can assert such conduct as a defense to any prosecution and conceivably could have a cause of action against that deputy. However, such proof would not be a ground for finding the Ordinance facially invalid and enjoining its enforcement. Moreover, in the circumstances of this case, where the policy set forth in the Ordinance is constitutional and the City has no power to train, assign, transfer, discipline or fire sheriff's deputies, an injunction prohibiting unconstitutional enforcement directed at the City would border on the futile.

B. *A Facially Valid Ordinance Cannot Be Enjoined.*

 "It is well settled that courts lack jurisdiction to enjoin the enforcement of a validly adopted constitutional ordinance." (*Carson Mobilehome Park Owners' Assn.* v. *City of Carson, supra,* 35 Cal.3d at p. 195; see also *Conover* v. *Hall, supra,* 11 Cal.3d at pp. 849-850; Code Civ. Proc., § 526.)

*EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179 [158 Cal.Rptr. 579] illustrates this rule in the context of a First Amendment challenge. In *EWAP,* the trial court invalidated, under the First Amendment, a provision of the City of Los Angeles Municipal Code requiring picture arcade operators to make the entire interior of their picture arcade business visible to persons entering the premises. It further prohibited picture arcade operators from closing off or concealing the booths in which pictures could be viewed. The Court of Appeal reversed because the regulation was a facially valid, reasonable time, place and manner regulation and explained: "The propriety of injunctive relief restraining enforcement of subdivision (i)

---

[4]Appellants rely on declaration testimony concerning alleged conduct by sheriff's deputies and Jack-in-the-Box and alleged intent by the City. The record indicates that the City properly objected to much of the declaration testimony on the grounds of lack of foundation, lack of personal knowledge, hearsay, irrelevancy and incompetency as to the meaning of the Ordinance and intent of the City.

depends on the validity of that section. '[T]he rule prohibiting . . . an injunction [that prevents the execution of a public statute by officers of the law for the public benefit] does not operate when the statute which is stayed is unconstitutional or otherwise invalid.' [Citations.] . . . however, *we have concluded that subdivision (i) is constitutional and that, therefore, the trial court had no jurisdiction except to deny the request to enjoin enforcement of that provision.*" (Italics added.) (*Id.* at p. 192.) As discussed below, the Ordinance is facially valid and thus cannot be enjoined.

## C. *A Preliminary Injunction Based on Application of a Valid Ordinance Is Rarely Justified Before a Trial on the Merits and Cannot Be Justified in This Case.*

It is also settled law that a preliminary injunction prohibiting enforcement of a valid ordinance on the ground that it has been applied unconstitutionally to particular plaintiffs should rarely be granted: "With all presumptions favoring the validity and constitutionality of the enactments of various legislative bodies, it should be only under extraordinary circumstances that anyone challenging the validity of such a law should immediately be granted the ultimate relief he seeks prior to any trial on the merits." (*City of Santa Monica* v. *Superior Court, supra,* 231 Cal.App.2d at p. 226; see also *Sundance Saloon, Inc.* v. *City of San Diego* (1989) 213 Cal.App.3d 807, 812 [261 Cal.Rptr. 841] [which involved First Amendment challenges to the application of an ordinance and is thus clearly applicable to appellants' application for a preliminary injunction in this case].)

 Appellants have shown no extraordinary circumstance to justify a preliminary injunction. The trial court found that appellants had failed to produce sufficient evidence to justify a preliminary injunction based on application of the ordinance. " 'The grant or refusal of a preliminary injunction is, generally speaking, within the discretion of the trial court, and its order may be reversed on appeal only if abuse of discretion is shown.' [Citation.] We find such abuse [of discretion] only when the decision of the court below exceeds the bounds of reason or contravenes the uncontradicted evidence." (*Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d at p. 309.) There is no basis for finding such an abuse of discretion in this case, and we uphold the trial court's denial of a preliminary injunction.

## D. *The Ordinance Is Content Neutral.*

The Ordinance is a content-neutral regulation since the conduct prohibited, vehicle-addressed solicitation, does not depend on the message of the solicitor. (*Ward* v. *Rock Against Racism* (1989) 491 U.S. 781 [105 L.Ed.2d

661, 109 S.Ct. 2746].) The cases cited by appellants to support their claim that the Ordinance is a content-based regulation of speech are patently inapposite, but they do serve a useful purpose to highlight the difference between regulations that have been invalidated as content based and this Ordinance.

For example, *Blair* v. *Shanahan* (N.D.Cal. 1991) 775 F.Supp. 1315 involved a San Francisco ordinance that prohibited all panhandling, but not other solicitations of pedestrians. Therefore, the prohibited conduct depended upon the message of the solicitor. *Simon & Schuster* v. *Crime Victims Bd.* (1991) 502 U.S. 105 [116 L.Ed.2d 476, 112 S.Ct. 501] involved New York's "Son of Sam" law, which provided that the income from any work describing a crime must be deposited in an escrow account for victims of the crime and the criminal's other creditors whenever the author was a convicted criminal or admitted a crime for which he or she had never been convicted. The court held this law placed a burden on particular speech based on its content which it did not impose on other speech: "New York has singled out speech on a particular subject for a financial burden that it places on no other speech and no other income." (*Id.*, at p. __ [116 L.Ed.2d at pp. 491-492, 112 S.Ct at p. 512].)

Similarly, *Grayned* v. *City of Rockford* (1972) 408 U.S. 104 [33 L.Ed.2d 222, 92 S.Ct. 2294], invalidated that portion of Rockford's ordinance which prohibited all picketing near schools, except labor picketing, because the prohibited conducted depended on the message of the pickets (*id.*, at p. 107 [33 L.Ed.2d at pp. 226-227]), but the court upheld the portion of the ordinance which prohibited noise adjacent to a school which was disruptive of school activities because it was content neutral. (*Id.*, at pp. 108-121 [33 L.Ed.2d at pp. 227-235].)[5] In contrast, the Ordinance applies to all solicitation without reference to the content of the solicitation.

Several cases have rejected appellants' argument that an ordinance which bans all vehicle-addressed solicitation is content based. Thus, in *ACORN* v. *City of Phoenix, supra,* the Ninth Circuit upheld an ordinance which prohibited any person from standing along or upon a street or highway and soliciting, or attempting to solicit employment, business, or contributions from the occupant of a vehicle as a content-neutral regulation of the time, place and manner of solicitation because, on its face, it did "not single out

[5]The other cases cited by appellants to support their claim that the Ordinance is a content-based regulation are equally inapposite as the conduct prohibited by the regulations being reviewed in those cases depended on the content of speech. The City does not dispute that content-based regulations are subjected to stricter judicial scrutiny. However, that rule is not brought into play in this case since this Ordinance is content neutral.

any group or the content of any speech." (*ACORN* v. *City of Phoenix, supra*, 798 F.2d at pp. 1266-1267; see also *ISKCON, supra*, 876 F.2d at p. 497 [On its face, the ordinance is content neutral because it "applies even-handedly to every organization or individual, regardless of viewpoint, which attempts to solicit 'employment, business or charitable contributions of any kind from the occupant of any vehicle' traveling on Baton Rouge streets."]; *ACORN* v. *St. Louis County, supra*, 930 F.2d 591, 594 [Ordinance prohibiting standing in the roadway to solicit a ride, employment charitable contribution or business from the occupant of any vehicle is "clearly neutral as to the content of the regulated speech"].)

E. *The Ordinance Serves a Legitimate Public Safety Interest, Is Narrowly Tailored to That Purpose, and Leaves Open Ample Alternate Avenues of Communication.*

■ The test for the validity of a content-neutral regulation, which bears on First Amendment rights in a public forum, is whether it serves a legitimate public interest, is narrowly tailored to serve that interest and leaves alternative channels for communication. (*Ward* v. *Rock Against Racism, supra*, 491 U.S. 781; *Frisby* v. *Schultz* (1988) 487 U.S. 474 [101 L.Ed.2d 420, 108 S.Ct. 2495]; *ACORN* v. *City of Phoenix, supra*, 798 F.2d 1260, 1267.)[6]

In examining the Ordinance under this test, it bears emphasis that the phrase "narrowly tailored" does not mean the "least restrictive" means imaginable or that a court could not imagine another regulation which it might find to be better tailored to the purpose served by the regulation. Thus, *Ward* v. *Rock Against Racism, supra*, 491 U.S. at page 797 [105 L.Ed.2d at page 679] explains that "narrowly tailored" does not mean "the least intrusive means," does not mean a "less restrictive alternative," and that ". . . restrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'" (See also *Sundance Saloon Inc.* v. *City of San Diego, supra*, 213 Cal.App.3d at pp. 821-822.) ■ The Ordinance clearly allows ample alternatives.

F. *The Ordinance Serves the Legitimate Public Interest in Safety and the Free Flow of Traffic on City Streets.*

Both the California and federal courts have considered ordinances which regulate solicitation in order to protect public safety and the free flow of

---

[6]While streets and sidewalks are traditionally treated as public forums, there is a question whether streets can be so treated while in use for vehicular traffic (*ACORN* v. *City of Phoenix, supra*, 798 F.2d 1260, 1267) but this opinion tests the Ordinance by the law applicable to public forums.

traffic and have repeatedly held such ordinances serve the public interest. Thus, *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d 497, 504, explains that "Governmental regulation of street traffic is clearly a legitimate exercise of the police power," and upheld subdivision (e) of the Los Angeles ordinance, which banned the sale of any newspaper, magazine, periodical, news publication or other printed matter while upon the roadway of any street, explaining "[p]rohibiting dissemination of anything in the path of cars, trucks and buses obviously furthers public safety, constituting a reasonable place restriction." (*Id.,* at p. 505.)[7] Similarly, *ACORN* v. *City of Phoenix, supra,* 798 F.2d at pages 1268-1269 explains that ". . . restrictions on solicitation are particularly appropriate in the context of assuring the free movement of vehicle traffic on city streets," and that "distraction of motorists occasioned by solicitation not only threatens to impede the orderly flow of traffic, but also raises serious concerns of traffic and public safety." (See also *ISKCON, supra,* 876 F.2d at p. 498 ["[R]estrictions on solicitation are particularly appropriate in the context of assuring the free movement of vehicles and promoting traffic safety . . . ."]; *ACORN* v. *St. Louis County, supra,* 930 F.2d at p. 594 ["[T]he government interest in safety and traffic efficiency is 'significant.' "].)

G. *The Ordinance Is Narrowly Tailored to Protect Against the Hazards of Vehicle-addressed Solicitation and Is Not Overbroad.*

In each of the cases previously discussed which addressed a prohibition on vehicle-addressed solicitation, the courts have held that limiting the prohibition to vehicle-addressed solicitation satisfies the requirement that the regulation be narrowly tailored to protecting the free flow of traffic and traffic safety. Thus, *ACORN* v. *City of Phoenix, supra,* 798 F.2d at page 1270 rejected the argument that the ban on all vehicle-addressed solicitation was invalid because Phoenix could have achieved its purpose less restrictively by banning only solicitation that disrupted traffic, and concluded that: "the Phoenix ordinance is narrowly tailored to address legitimate traffic safety concerns."

*ISKCON* similarly rejected the claim that a ban on all vehicle-addressed solicitation was not narrowly tailored and was overbroad because it was not necessary to include all streets because some are not heavily travelled, explaining that: " '[t]his ordinance is narrowly drawn and aimed at the

---

[7]In contrast, the court struck subdivision (b) of the Los Angeles ordinance because it was a total ban of the sale of printed matter on the sidewalk and thus not justified by the interests in traffic safety and the free flow of traffic. (*Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at p. 504.) As discussed *post,* it thus also failed the requirements that the regulation be narrowly tailored and leave open ample alternative avenues of communication.

peculiarly disruptive nature of fund solicitation from occupants of vehicles causing delays and interference with vehicular traffic.' " (*ISKCON, supra,* 876 F.2d at p. 498.) Similarly, *ACORN* v. *St. Louis County, supra,* 930 F.2d at page 596 rejects the claim that a ban on vehicle-addressed solicitation was overbroad and unjustified because the city had not done a study, *ACORN's* practices were safe and there was no evidence of *ACORN's* solicitors being hurt: "*The government need not wait for accidents to justify safety regulations.* [Citation.] [¶] Nor is it sufficient for ACORN to show that its particular practices are safe if the practice of in-the-roadway solicitation generally is dangerous. It is the regulation's relationship 'to the overall problem the government seeks to correct,' not its necessity in ACORN's particular case, that determines its validity. . . . 'there can be no doubt from the evidence, *as well as one's own common sense, that soliciting in the streets is inherently dangerous.*' " (Italics added.)

This point is further illustrated by the instances in which solicitation regulations have been struck as overbroad. In *Young* v. *Municipal Court, supra,* 16 Cal.App.3d 766, a Sacramento County ordinance that banned all peddling or giving away of goods or wares along or upon the public roads was invalidated under the First Amendment because it prohibited dissemination of materials and goods to pedestrians and homeowners as well as to motorists: "The vice [of the ordinance] lies in its prohibition of pedestrian-addressed activities when a restriction upon vehicle-addressed activities would have served its purpose. In short, the prohibitory portion of the ordinance is not narrowly limited to activities which endanger automobile traffic." (*Id.,* at pp. 770-771; see also *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at pp. 504-505 [invalidating the section of an ordinance banning all solicitation and upholding the section which prohibited vehicle-addressed solicitation].)

H. *Because the Ordinance Is Narrowly Tailored to Prohibit Only Vehicle-addressed Solicitation, It Leaves Open Ample Alternative Avenues of Communication.*

The Ordinance allows solicitation of pedestrians, businesses and residences. *ISKCON* squarely rejected the claim that an ordinance which allows such solicitation and bans only vehicle-addressed solicitation denies adequate alternative avenues of communication: "The limited nature of this ordinance also leaves open ample alternative channels of communication. The ordinance prohibits only the solicitation of funds from the occupants of motor vehicles. It does not prohibit solicitation of funds from pedestrians, door-to-door canvassing, or telephone solicitations." (*ISKCON, supra,* 876 F.2d at p. 498; see also *ACORN* v. *City of Phoenix, supra,* 798 F.2d at p.

1271.) Moreover, it is not necessary to run out into the street or hail drivers in order to announce availability for work; prospective employers know that is why men congregate at certain locations and go to those locations when they wish to employ a day worker. Further, the City has established a telephone hiring exchange which adds an avenue of communication that would not ordinarily be available.

I. *The Ordinance Gives Fair Notice of the Conduct Which It Prohibits; Thus It Is Not Vague and There Is No Basis Upon Which It Can Be Deemed a Prior Restraint.*

In upholding the sections of an ordinance that prohibited deliberately noisy activity that disrupts normal school activities against a claim that it was void for vagueness, the United States Supreme Court explained in *Grayned* v. *City of Rockford, supra,* 408 U.S. 104, that: "Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the Rockford ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' [citation] but we think it is clear what the ordinance as a whole prohibits." (*Id.,* at p. 110 [33 L.Ed.2d at pp. 228-229], fn. omitted; see also *Music Plus Four, Inc.* v. *Barnet* (1980) 114 Cal.App.3d 113, 126 [170 Cal.Rptr. 419] ["The Constitution does not require impossible standards. All that is required is that the language convey sufficiently definite warning as to the proscribed conduct, when measured by common understanding and practices."].)

In this case, appellants cannot credibly claim they do not understand such commonly used words as "street" and "vehicle," and "solicitation" has been carefully defined. Moreover, it is well established that an ordinance should be construed in a manner to preserve its constitutionality if its terms are susceptible to constitutional interpretation. (*Frisby* v. *Schultz, supra,* 487 U.S. at pp. 478-484 [101 L.Ed.2d at pp. 427-432]; *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at pp. 505-506.)

Appellants' claim that the Ordinance constitutes a prior restraint on First Amendment rights is mystifying. ■ A prior restraint is generally a law or licensing scheme that (1) vests in public officials unbridled discretion to grant or deny a permit to engage in expressive activity, or (2) fails to set forth a time within which a public official must act on an application for such a permit. (See, e.g., *FW/PBS, Inc.* v. *Dallas* (1990) 493 U.S. 215 [107 L.Ed.2d 603, 110 S.Ct. 596]; *Southeastern Promotions, Ltd.* v. *Conrad* (1975) 420 U.S. 546 [43 L.Ed.2d 448, 95 S.Ct. 1239]; *Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147 [22 L.Ed.2d 162, 89 S.Ct. 935].) ■ There is no

such requirement involved here. Appellants may congregate on City sidewalks and solicit pedestrians, residences and business without the need for any permit.[8]

### J. The Ordinance Is Not an Unconstitutional Infringement of the Right to Work.

The Ordinance does not prevent seeking daywork in the City, it simply prevents distracting motorists and running out into traffic to solicit. Thus, to the extent the Ordinance can be viewed as affecting the right to work, it is a reasonable and permissible regulation of the right to engage in business. (See *In re Maki, supra,* 56 Cal.App.2d 635; *O'Hagen v. Board of Zoning Adjustment, supra,* 19 Cal.App.3d 151, 159; see also discussion, *post,* of *Loska v. Superior Court, supra,* 188 Cal.App.3d 569; *San Francisco Street Artists Guild v. Scott, supra,* 37 Cal.App.3d 667; and *In re Mares* (1946) 75 Cal.App.2d 798 [171 P.2d 762] [establishing the authority of local jurisdictions to regulate solicitation, commerce, and business on city streets under the police power].)

 *Loska* explains that " '. . . there is no vested right to do business upon the public streets' " and " '[u]se of a public street for private enterprise . . . is a special privilege . . . which may be . . . entirely withheld.' " (*Loska v. Superior Court, supra,* 188 Cal.App.3d at pp. 579-580.) Further, both *Amezcua* and *Hispanic Taco Vendors* upheld regulations of vending on city streets despite claims that the regulations improperly burdened the plaintiffs' right to earn a living.

### K. The Ordinance Does Not Duplicate or Conflict With the Vehicle Code and Does Not Address an Area Fully Covered by State Law; the Ordinance Regulates Solicitation on City Streets and Sidewalks While the Vehicle Code Addresses Solicitation on Freeways.

 Vehicle Code section 22520.5 prohibits vending on "freeways," on "freeway on- and off-ramps" and within a 500-foot radius of a freeway ramp. Appellants' claim that the Ordinance duplicates that section, and further claim that Vehicle Code section 22520.5 impliedly preempts all local regulation of pedestrian solicitation. As explained previously, the issue is raised for the first time on appeal, but under *Ward,* we entertain the issue.

The Ordinance does not duplicate Vehicle Code section 22520.5 because it regulates solicitation on sidewalks, streets, driveways and highways within

---

[8]The citation by appellants to *Paradise Hills Associates v. Procel* (1991) 235 Cal.App.3d 1528 [1 Cal.Rptr.2d 514], which invalidated a preliminary injunction prohibiting a sign on a homeowner's own property complaining about the quality of plaintiff's work, is equally inapposite. The Ordinance does not prohibit seeking work in the City.

the City's jurisdiction rather than on freeways, freeway ramps or areas within 500 feet of a ramp. As demonstrated by the language of Vehicle Code section 22520.5 and other relevant Vehicle Code sections, the Legislature has not expressed any intent to preempt all regulation of pedestrian solicitation by local jurisdictions. Instead, the Legislature chose to limit Vehicle Code section 22520.5 to freeways, freeway ramps and areas within 500 feet of a freeway ramp and to use the 500-foot radius to mark the dividing line between state and local jurisdictions.

The terms "freeway," "highway," "road," "roadway," "sidewalk," and "street" are each defined in the Vehicle Code. (See Veh. Code, §§ 332, 360, 527, 530, 555, and 590, respectively.) It must be assumed that the Legislature was aware of these definitions and chose to limit Vehicle Code section 22520.5 to freeways by not including the terms "street," "road," and "sidewalk" when it drafted the section. (*Estate of McDill, supra,* 14 Cal.3d 831, 837.)

Similarly, it must be assumed that the Legislature was aware of the case law when it amended Vehicle Code section 22520.5. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 65 [81 Cal.Rptr. 465, 460 P.2d 137].) Several cases establishing the power of cities to regulate pedestrian entrepreneurs and solicitation on city streets and sidewalks had been decided before Vehicle Code section 22520.5 was amended in 1988. *Loska* v. *Superior Court, supra,* 188 Cal.App.3d 569, *San Francisco Street Artists Guild* v. *Scott, supra,* 37 Cal.App.3d 667, *In re Mares, supra,* 75 Cal.App.2d 798, and *Amezcua* v. *City of Pomona, supra,* 170 Cal.App.3d 305, had all been decided before the section was amended in 1988. Had the Legislature intended to change the law by preempting local regulation of solicitation and commerce on streets and sidewalks, it could easily have done so by simply adding the terms sidewalks and streets to Vehicle Code section 22520.5.

If a person engages in vehicle-addressed solicitation within 500 feet of a freeway off-ramp, that person is violating state law. If a person engages in vehicle-addressed solicitation beyond that limit in the City of Agoura Hills, that person has violated the Ordinance.[9] Thus, the Ordinance does not duplicate or conflict with the Vehicle Code. Rather, it complements the Vehicle Code.

In these circumstances, there is no basis for finding that the Ordinance is preempted by the Vehicle Code. As *Sherwin-Williams Co.* v. *City of Los*

---

[9]Appellants imply that the Ordinance has been enforced within the 500-foot radius. However there is no competent, undisputed evidence in the record to support that claim. In any case, that could not be a basis for finding the Ordinance facially invalid. Given the terms used in the Ordinance and Vehicle Code section 22520.5, there is no overlap or ambiguity as to where City regulation ends and Vehicle Code regulation begins. Even if there were some ambiguity, the court should construe the Ordinance in a manner which preserves its constitutionality. (*Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at pp. 505-506.)

*Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534], explains, local legislation is preempted when: (1) it conflicts with, duplicates or contradicts state law; or (2) enters a field fully occupied by state law.

Local law contradicts state law when it is "inimical" thereto and duplicates state law when it is coextensive therewith. (4 Cal.4th at p. 898.) It enters a field fully occupied by state law when the Legislature has "*expressly manifested its intent*" to do so or has impliedly done so as shown by the following indicia: (1) the subject has been so fully covered by state law as to clearly indicate it is exclusively a matter of state concern; (2) the subject matter has been partially covered by general law in such terms as to clearly indicate that the paramount state concern not tolerate local regulation or the subject is of such a nature that the adverse effect of local regulation on transient citizens outweighs the potential benefit to the locality. (*Id.*, at p. 898.)

In this case, it is clear that the Ordinance does not duplicate Vehicle Code section 22520.5 and that it complements rather than interferes with Vehicle Code section 22520.5. Further, the express language of Vehicle Code section 22520.5, and the sections defining the terms it uses, provide no support for appellants' claim that the Legislature intended to preempt local regulation on city streets and sidewalks beyond the 500-foot radius established in Vehicle Code section 22520.5. If the Legislature had wanted to preempt regulation like the Ordinance, it could have added the terms "streets" and "sidewalks," or it could have simply have prohibited solicitation of motorists. Instead, the decision to limit the section to freeways, freeway ramps and areas within 500 feet of a freeway ramp demonstrates legislative intent to permit local regulation.

Appellants' reliance on Vehicle Code section 21 is of no avail. That section declares that the Vehicle Code preempts local regulation of "*matters covered by this code* unless expressly authorized herein." (Italics added.) However, the Vehicle Code does not cover solicitation of commerce on city streets and sidewalks. The cases cited by appellants to support their claim that the authority of local jurisdictions to regulate traffic is limited by Vehicle Code section 21 to those matters that are expressly authorized by the Vehicle Code all involved regulation of "vehicular traffic."

Those cases are irrelevant to this case because the Ordinance does not regulate vehicular traffic, it regulates solicitation, commerce and business. As *Amezcua* explained in rejecting an argument almost identical to that made by appellants herein: "Appellants' argument that the state Vehicle Code preempts the City's authority to regulate pushcarts on public streets is

without merit. This ordinance is concerned with the regulation of business on the city streets; it is not addressing the regulation of vehicular traffic. The City's power to impose such restrictions on business on the City's streets is without question." (*Amezcua* v. *City of Pomona, supra*, 170 Cal.App.3d at p. 311, fn. omitted.) *Amezcua* reached this conclusion even though the traffic hazard created by nonmotorized push carts was one of the stated reasons for the challenged ordinance. Thus, the fact that traffic safety was a motivating factor for the Ordinance is not a basis for circumscribing the City's power to regulate business on its streets and sidewalks.

Appellants would have the court ignore all the above authorities and the Vehicle Code definitions of the terms in Vehicle Code section 22520.5 and hold that by regulating solicitation within 500 feet of a freeway off-ramp, the Legislature intended to preempt all local solicitation of motorists by pedestrians from city streets and sidewalks. It is clear from the relevant Vehicle Code sections and the applicable case law, that appellants' claim is without merit.

V.

DISPOSITION

The judgment is affirmed. Costs of appeal are awarded to respondents.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied May 19, 1994. Johnson, J., was of the opinion that the petition should be granted.