*345 OPINION OF THE COURT
Michael A. Gary, J.
Defendants each are charged in separate informations, with violating Administrative Code of the City of New York § 20-453 (formerly § B32-491.0), peddling without a license. Defendants both moved for dismissal of the charges pursuant to CPL 170.30 (1) (f) on the ground that there is a legal impediment to their prosecution. They contend the statute under which they have been charged is inapplicable to them as they fall within the stated exemption to the license requirement: "§20-453 License required. It shall be unlawful for any individual to act as a general vendor without having first obtained a license in accordance with the provisions of this subchapter, except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.” (Emphasis added.)
In both cases before the court, defendants do not raise a constitutional challenge to the statute under which they are charged. Rather, they seek the protection of its 1982 amendment, which provides an exemption to the licensing requirement for those who peddle "only newspapers, periodicals, books, pamphlets or other similar written matter” (Administrative Code § 20-453). Specifically, defendants allege that calendars and datebooks may be peddled without a license pursuant to .the statutory exception.
Defendant Shapiro claims that his calendars are periodicals, in that they come out regularly once a year, and pamphlets, in that they inform the reader of the day of the week on which a particular date falls, and provide information about when national and religious holidays are celebrated. Defendant Sutton argues that his datebooks are quite simply books according to a dictionary definition and that if the City Council sought a stricter definition of the word it should have used more precise language. The People respond that just because the items in question are composed of paper and have some writing on them, it does not mean that they fall within the written matter exemption of the statute.
Though a determination of this sort is usually reserved for the trier of fact, this court, sua sponte and in response to defendants’ motion to dismiss has viewed the evidence in *346 question to reach its decision. After a thorough examination of such evidence in the presence of both defendants’ counsel, review of the motions, the responses and the relevant law, this court must deny the defendants’ motions for the reasons that follow.
This court has researched the sparse legislative history of Administrative Code § 20-453 (formerly § B32-491.0) and specifically its amendment by Local Laws, 1982, No. 33 of the City of New York on June 15th of that year. Up until this amendment the law treated all vendors the same but in that form, it was criticized for its potentially chilling effect upon the dissemination of newspapers and self-published books, poetry and pamphlets, which as "pure speech” all enjoy First Amendment protection. In response to these criticisms, the City Council passed, and the Mayor signed, the "written matter” exception to Administrative Code § 20-453. As the People contend, the legislative history of the 1982 amendment, including the minutes of hearings on the bill, clearly demonstrates that the City Council’s intent was to permit only vendors of a narrowly defined category of written matter to sell their materials without complying with the legal requirements for a license.
In a variety of contexts the United States Supreme Court has referred to a First Amendment right to both impart and receive information and ideas relatively unimpeded by legislative intervention. It has consistently invoked the First Amendment for the purpose of preserving a marketplace of ideas in our society uninhibited by legislative or administrative restraint. (See, Kleindienst v Mandel, 408 US 753 [1972]; Schad v Borough of Mount Ephraim, 452 US 61 [1981]; Tinker v Des Moines Ind. Community School Dist., 393 US 503 [1969].) Every medium for the communication of ideas which may affect public attitudes and behavior, from nude dancing (Schad) to motion pictures (Joseph Burstyn, Inc. v Wilson, 343 US 495 [1952]), is entitled to First Amendment protection.
The specific language in Administrative Code § 20-453 must be analyzed in the context of the City Council’s intent to allow vendors to exercise their right of free speech within the United States Supreme Court’s delineation of the First Amendment’s scope. The common characteristic of "newspapers”, "periodicals”, "books” and "pamphlets”, which are set forth in the statute as exempt, is the ability to communicate in a manner that contributes to or generates the exchange of *347 ideas that trigger constitutional protection and are fundamental to a democratic society.
The calendars and datebooks which are the subject of these motions are ordinary calendars and ordinary datebooks. Their primary purpose is the mere listing of the days of each week and month in a given year. While they may both contain other items of information, this information is more akin to the type given by a thermometer rather than a newspaper or a book.
Defendant Shapiro argues that some authority for the proposition that calendars come within the statutory exemption comes from a decision by the New York City Environmental Control Board (E.C.B.). In City of New York v Hogan (appeal No. 0127, decided June 24, 1987) the Board reversed an Administrative Law Judge’s decision that a peddler vending calendars on the street without a license violated Administrative Code § 20-453. Hogan had been issued a summons and fined $100. The People contend that the District Attorney’s office did not actually litigate the disputed issue before the E.C.B. and so should not be precluded from litigating against defendant Shapiro the issue determined by that tribunal. The People point out that in Hogan, although the city through the Department of Consumer Affairs was nominally a party to the E.C.B. case, it did not submit papers, and its position was otherwise unknown to the Board. Moreovér, the E.C.B. adjudication against Hogan was a relatively insignificant matter, summarily disposed of on the basis of only Hogan’s papers, affording other parties little incentive to fully litigate the issues.
The E.C.B. determination in Hogan (supra) does not preclude the People from litigating the same issue before this court for two reasons. First, the People never had a full and fair opportunity to contest the prior determination. (See, Kaufman v Lilly & Co., 65 NY2d 449 [1985]; Ryan v New York Tel. Co., 62 NY2d 494 [1984].) Second, the- issue here is one of statutory construction. The courts, not administrative boards, are the final arbiters of matters of statutory construction and apparently no court has yet passed on the issue presented here.
While not binding on this court, the question remains as to what authority is to be accorded to the E.C.B.’s decision in Hogan (supra). Examination of the actual decision shows that it is three paragraphs in length and devoid of any reasoning. *348 It merely states a conclusion: "Printed material may be sold without a vendor’s license regardless of its content. The Board has found that the material respondent was vending constitutes such written matter”. (City of New York v Hogan, supra.)
It appears the Board, as noted in its decision, equated the words "printed material” (calendars) with the "other similar written matter” referred to in the statute. This court finds no basis for the Board’s conclusion and rejects its interpretation of the statute, for it would render the phrase "other similar written matter” meaningless. The City Council could just as easily have used the phrase "printed material” if it so desired. The dictionary definition of written, as a past tense of write, is "compose in a literary form” (Webster’s Third New International Dictionary, Unabridged Edition, at 2641). The definition for printed, as a past tense of print, makes no mention of literary expression, but instead discusses the various mechanical processes in transferring some type of ink to some type of paper. Had the Council used the phrase "printed material” the exemption would have been obviated. All the language used was clearly intended to limit the licensing exemption to the most discrete category of written matter possible: "only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items” (Administrative Code § 20-453). Obviously, the City Council recognized that in the area of expression no fine line can be drawn among various forms of written matter, nor can one word completely describe all the forms the expression of ideas may take. Thus, the need for the rather general "other similar written matter” language— it affords First Amendment protection equally to the poet who sells his poems and to the author who sells a book, even if it were perhaps written in the form of a calendar.
Papers that are clothed between two covers with a spine to bind them together, and happen to have some words included should not be categorized in the same vein as a political pamphlet, a newspaper, or even a poem, which is sold in the free-flowing exchange of ideas in this society.
Thus, defendants’ motions to dismiss are denied.