OPINION OF THE COURT
Angela Mazzarelli, J.
This case concerns an issue, hitherto unresolved, that has arisen recently in numerous cases in New York City Criminal Court.
*477 The facts are not in dispute. Defendant is an artist who paints floral pastels in the style of René Magritte. He does not, and does not claim to have, any license to vend merchandise on the sidewalk in New York City. On June 17, 1987 he was displaying his paintings for the purpose of sale near the New York Library at 42nd Street and Fifth Avenue. He received a desk appearance ticket and was arraigned in Criminal Court on July 8, 1987 on a charge of violating Administrative Code of the City of New York § 20-453, by vending his paintings without having first obtained a vendor’s license from the Department of Consumer Affairs, a class B misdemeanor, punishable by a fine of $1,000 or three months’ imprisonment.
Defendant now moves to dismiss on the ground that the Administrative Code section under which he is prosecuted is unconstitutional. The section reads as follows: "§ 20-453 License required It shall be unlawful for any individual to act as a general vendor without having first obtained a license in accordance with the provisions of this subchapter, except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.”
Defendant argues that this statute, in exempting the vendors of written material from the licensing requirement, discriminates unreasonably against artwork. His theory is that written material and pictorial artwork, being both forms of expression protected by the First Amendment, should be treated identically as far as the requirement for a vendor’s license is concerned. Therefore, he finds the licensing exemption’s failure to include pictorial artwork is a denial of equal protection of the laws and hence a violation of NY Constitution, article I, § 11. He includes in this argument the fact that street musicians are not covered at all by this Code section and therefore need not obtain a license to play in the street. This leaves both written and musical individual expression entirely untrammeled whereas pictorial expression is limited by the necessity of a license. Such necessity, moreover, is far from being a mere formality. Although defendant does not allege that the licenses are awarded on any but a first-come, first-serve basis, he does allege that the limited number of licenses authorized have already been given out and that none will be available until later this year. He also alleges that the withholding of a license, or conversely the requirement of a *478 license, is unfairly burdensome as he depends on the public display of his artwork for his exposure and hence his livelihood. Defendant speaks of the Code section as "unconstitutional as applied to him” and would like it invalidated. A conceptually cleaner approach would be to ask that the reading of the exemption be broadened to include paintings and thus bring the section into compliance with the guarantee of equal protection of NY Constitution, article I, § 11. Since defendant’s claim relates to an alleged failure of equal protection of the laws, the court will take this approach in resolving the case. (Goodell v Goodell, 77 AD2d 684 [3d Dept 1980].)
The prosecutor argues that artwork is not speech at all, still less the "pure speech” protected by US Constitution First Amendment and NY Constitution, article I, § 8. To him, the sale of paintings is a commercial activity, indistinguishable from the sale of any other object. The validity of the difference in treatment of written material, on the one hand, and pictorial artwork on the other, lies, therefore, in the fact that they do not partake of the quality of pure speech. Since the activity does not fall under the protection of the First Amendment, the court need only look for a rational relationship between the ends to be served and the means adopted to serve them. This relationship the prosecutor finds in the need to control the sidewalk traffic in New York City’s streets without burdening unduly the artistic self-expression of its citizens. The artist’s freedom of expression is not abridged since he is not prevented from painting or selling his pictures.
Defendant has a heavy burden of persuasion. To begin with, all statutes carry a strong presumption of constitutionality. (McKinney’s Cons Laws of NY, Book 1, Statutes § 150; Farrington v Pinckney, 1 NY2d 74 [1956].) This presumption applies as strongly in the case of municipal ordinances as in the case of statutes. It is presumed that the City Council was in possession of facts that support the ordinances. (Wiggins v Somers, 4 NY2d 215 [1958].) Such presumption is particularly strong when, as in the instant case, the ordinance is intended to promote the public health, safety and welfare. (Matter of Avon W. Corp. v Woolley, 266 App Div 529 [1st Dept 1943], affd 291 NY 687 [1943].) The defendant has the burden of proving the statute unconstitutional beyond a reasonable doubt. (People v Lang, 36 NY2d 366 [1975].) Moreover, lower courts and even intermediate appellate courts, deeming such judgments best left to higher courts, are all the more reluctant to find a statute unconstitutional. Lower courts normally *479 do not find a statute unconstitutional barring exceptional circumstances involving life and liberty. (National Psychological Assn. v University of State of N. Y., 18 Misc 2d 722 [Sup Ct, NY County 1959], affd 10 AD2d 688 [1st Dept 1960], affd 8 NY2d 197 [1960].) Indeed there is a line of cases that hold that, where the facts are not in dispute, the better practice is to raise the issue of a criminal statute’s constitutionality, not in Criminal Court, but by an action for declaratory judgment in Supreme Court, because the latter has the requisite equity jurisdiction. (New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272 [1941]; Bunis v Conway, 17 AD2d 207 [4th Dept 1962]; People v Babylon Tr., 93 Misc 2d 67 [App Term, 2d Dept 1977].)
Nonetheless, there is no actual bar to the consideration of this issue by this court, and in the interests of judicial economy, this court will decide the motion on its merits.
To begin with, pictorial artwork, as a form of self-expression, is certainly covered by the guarantee of freedom of speech contained in both the Federal and New York State Constitutions. (People ex rel. Arcara v Cloud Books, 68 NY2d 553 [1986]; Duchein v Lindsay, 42 AD2d 100 [1st Dept 1973], affd 34 NY2d 636 [1974].) First Amendment protection is not seriously at issue here.
The phrase "First Amendment”, however, is not equivalent to "open sesame”. It has been consistently held that a municipal corporation has the right to regulate and license the use of public forums, even with respect to First Amendment activities, as long as the regulation relates reasonably to time, place and manner, does not cut off other channels of communication, is content-neutral and does not vest in administrative officials the discretion to grant or deny a permit. They must serve a legitimate governmental function and be narrowly drawn. (United States v O’Brien, 391 US 367 [1968]; Consolidated Edison Co. v Public Serv. Commn., 447 US 530 [1980]; Erznoznik v City of Jacksonville, 422 US 205 [1975]; Schad v Mount Ephraim, 452 US 61 [1981]; Hynes v Mayor of Oradell, 425 US 610 [1976].)
There is, then, no First Amendment bar to the licensing requirement for artwork. Leaving aside the exemption for written material, the Administrative Code section promotes a compelling purpose, the regulation of pedestrian traffic. There is no allegation that it operates on any but a first-come, first-serve basis, it is content-neutral and closes off no other means *480 of dissemination. The vending of artwork, therefore, is receiving all the First Amendment protection to which it is entitled.
The guarantee of equal protection should ensure that like things are treated in a like manner, avoiding invidious or arbitrary distinctions. (Broadrick v Oklahoma, 413 US 601 [1973].) In a First Amendment context, an arbitrary distinction is one based on content, not on medium of expression. (Perry Educ. Assn. v Perry Local Educators’ Assn., 460 US 37 [1983]; Police Dept. of Chicago v Mosely, 408 US 92 [1972]; Consolidated Edison Co. v Public Serv. Commn., 447 US 530 [1980], supra.) Many things are protected by the First Amendment. Pictorial artwork shares this distinction with movies, tattooing and topless dancing, all of which may be regulated but not banned. (Joseph Burstyn, Inc. v Wilson, 343 US 495 [1952]; People v O’Sullivan, 96 Misc 2d 52 [App Term, 1st Dept 1978]; Doran v Salem Inn, 422 US 922 [1975]; Bellanca v New York State Liq. Auth., 54 NY2d 228 [1981].) This does not mean that such now legitimate forms of self-expression all deserve the same administrative treatment. The rationale of the exception in this case is based on an exception to the rule governing the regulation of First Amendment activities in public which was alluded to above. Certain exceptions have been carved out of this rule, always in a noncommercial and highly political or religious context. (Murdock v Pennsylvania, 319 US 105 [1943].) The two cases that arose in New York are People v Krebs (54 Misc 2d 578 [Crim Ct, NY County 1967]) and Hull v Petrillo (439 F2d 1184 [2d Cir 1971]), the first involving a defendant who sold political buttons while distributing leaflets in which she expressed her opposition to the Vietnam War and the second involving the sale by the Black Panthers of their newspaper. Both courts found that this political speech, although accompanied by commercial activity, was exempt from licensing requirements. To embody this exception in the Administrative Code in a content-neutral way required the exemption of the medium of printed words.
While this outcome may be considered paradoxical, since political artwork must be licensed and nonpolitical written matter need not be, this court still does not find that the presumption of constitutionality has been overcome. Defendant’s analogy of his own situation with that of street musicians is also misplaced. Street musicians, while hopeful of contributions, are not, strictly speaking, selling anything and are not in possession of wares. Defendant’s argument that the licensing requirement frustrates his ability to make a living is *481 irrelevant because commercial considerations have no place in the discussion of First Amendment protection. (People v Krebs, supra.)
Defendant’s motion to enlarge the coverage of the licensing exemption is denied.
In light of the hardship defendant will suffer on conviction of this offense, i.e., confiscation of his artwork and the tools of his trade, the court considers this motion to be one for dismissal in the interest of justice (CPL 170.40). On this ground, the court grants the motion to dismiss the complaint.