OPINION OF THE COURT
Alfred Donati, Jr., J.
Defendant, Garfield Gillings, is charged with selling "albums” on Waverly Place and Sixth Avenue on July 25, 1990, without a proper vendor’s license, in violation of Administrative Code of the City of New York § 20-453, which mandates *951 such license for New York City vendors. Section 20-453 reads as follows: "It shall be unlawful for any individual to act as a general vendor without having first obtained a license in accordance with the provisions of this subchapter, except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.” (Emphasis added.)
The information against defendant reads, in pertinent part, as follows:
"Police Officer Hector Lorenzo * * * observed the above-named defendant display and offer for sale Albums [sic], without a proper vendor’s license. Specifically, the officer saw defendant standing for a period of approximately 5 minutes immediately behind a blanket with albums on it, and saw defendant exchange the above-described merchandise with 1 passerby in return for currency.
"At the time of the officer’s observations, defendant was not displaying a license issued by the Department of Consumer Affairs and could not produce one when asked, Moreover and [sic] the officer has examined an official list of vendors licensed by the Department of Consumer Affairs and defendant’s name does not appear on that list.”
Defendant entered into a stipulation with the People, on January 7, 1991, which characterizes the contents of the record albums in question. The stipulation provides in pertinent part as follows:
1. Approximately 200 record albums were confiscated.
2. All of the albums were used and most were of "historical interest”.
3. The majority of albums were jazz, the collection also included classical and rock music, prose and poetry.
4. Included in the collection was the poetry of Carl Sand-berg and an album of Basil Rathbone reading Edgar Allan Poe.
5. Many of the albums contained "album notes” concerning the recordings.
Defendant argues that the materials sold by him are protected under article I, § 8 of the NY Constitution and under the First Amendment and Equal Protection Clause of the US *952 Constitution,* in that those constitutional provisions would be violated if the materials sold by defendant were not treated as coming within the ambit of the written matter exception set forth in section 20-453, above (see, Shad v Mount Ephraim, 452 US 61, 69-70 [1981]; Bankers Life & Cas. Co. v Crenshaw, 486 US 71, 82-84 [1988]; People ex rel. Arcara v Cloud Books, 68 NY2d 553 [1986]; People v Shapiro, 139 Misc 2d 344 [Crim Ct, NY County 1988]).
Specifically, defendant alleges that the described record albums should not be distinguished from those materials literally protected by the written matter exception in section 20-453, for purposes of that exception from the license requirements of section 20-453.
That exception, which allows vendors of written matter to vend without a license, was designed to permit the constitutionally protected flow of free expression associated with the medium of the written word (see, People v Milbry, 140 Misc 2d 476, 480 [Crim Ct, NY County 1988]; People v Krebs, 54 Misc 2d 578 [Crim Ct, NY County 1967]). An examination of the specifics set forth in the stipulation above reveals that some of the albums seized, namely those which contain words with music, words alone or accompanying written notes, could be found to come within the ambit of the written matter exception of section 20-453, upon application of the legislative purpose for that exception, and the applicable constitutional principles (see, Shad v Mount Ephraim, supra, at 69-70; Bankers Life & Cas. Co. v Crenshaw, supra, at 82-84; Broadrick v Oklahoma, 413 US 601 [1973]; People v Shapiro, supra, at 346-347). Moreover, wherever possible, statutory or administrative provisions should be construed to avoid constitutional problems (see, DeBartolo Corp. v Florida Gulf Coast Trades Council, 485 US 568, 575 [1988]).
However, some of the albums, which are recordings of music alone, without lyrics or accompanying written notes, do not fall within the written matter exception of section 20-453. Music, a form of expression and communication, is of course protected under the First Amendment (see, Ward v Rock Against Racism, 491 US 781 [1989]). But, music alone, without some word or speech component, is not so similar to the written matter protected by the exception in section 20-453, as *953 to constitute an invidious or arbitrary omission on the part of the Legislature which protected the latter in that exception (see, Travis v Owego-Apalachin School Dist., 927 F2d 688, 691 [2d Cir 1991]; Shad v Mount Ephraim, supra; Bankers Life & Cas. Co. v Crenshaw, supra; Consolidated Edison Co. v Public Serv. Commn., 447 US 530, 535 [1980]; Broadrick v Oklahoma, supra; People v Milbry, supra, at 479).
The foregoing is based on an analysis of a content-neutral distinction between the materials protected by, and those outside of the protection of, the exception in section 20-453. However, even if that distinction were not to be treated as content-neutral, the same result would follow. For example, on a content-relevant basis, the written matter exception here may be analogized to the "limited public forum” category referred to in Travis v Owego-Apalachin School Dist. (supra, at 692), which in turn is based upon the analysis, in Cornelius v NAACP Legal Defense & Educ. Fund (473 US 788, 802 [1985]) and Perry Educ. Assn. v Perry Local Educators’ Assn. (460 US 37, 45-46 [1983]), addressing the principles applicable to governmental restrictions on expressive activity. Applying that analogy, the inquiry is whether the expressive activity permitted (in the instant case, words, written or recorded) is of a similar or different "genre” than that of the activity which is denied protection (in the instant case, music, denied the protection not, as indicated, of freedom of speech, but, rather, denied the protection of the exception to the activity regulated by section 20-453). This court holds that the answer to that inquiry, in the instant case, is that "words” and "music” are of a sufficiently dissimilar "genre” as to be permissibly, for constitutional purposes, distinguishable in a regulatory statute.
Consequently, the information in its entirety is not subject to dismissal, as it is clear that defendant may be prosecuted for selling some of the albums in his possession, without violation of the constitutional principles discussed herein. However, the question of precisely which materials are not constitutionally protected, and thus may be introduced in evidence to substantiate the charges here, as against which materials are constitutionally protected, when measured against the standards discussed herein, is to be determined on an item-by-item basis when and if the People seek to intro *954 duce a particular item in evidence at trial. Accordingly, the determination of the admissibility or inadmissibility of each specific record album herein, is deferred to the trial court.
Defendant’s motion to dismiss the information is therefore denied.

 Although defendant does not specifically cite the Equal Protection Clause in his argument, he does set forth an equal protection argument in his behalf.