OPINION OF THE COURT
Dynda L. Andrews, J.
On October 3, 1993, at the corner of West 46th Street and Broadway, defendant was arrested while taking photographs of people who paid him to do so in front of the painted backdrop which defendant provided. When a police officer asked defendant how much he charged, defendant reportedly said "five dollars.” He was then arrested for unlicensed general vending, an unclassified misdemeanor specified in Admin *669 istrative Code of the City of New York § 20-453[1] and failing to display an appropriate tax certificate.[2]
The less-than-felicitously worded complaint charged defendant based on
"the [arresting police sergeant’s] * * * observation of] the defendant displaying] and offering] for sale souvenir photos. Specifically, the officer saw defendant standing for approximately 3 minutes immediately next to a back drop cloth with camera and the above-described merchandise [sic] was spread out for sale thereon.[3]
"Defendant was the only person who was uninterruptedly in immediate proximity to the merchandise and did not leave the merchandise unprotected during the entire period of the officer’s observation.
"The officer approached defendant and asked the price of the merchandise and defendant said [$]5.00 per photo taken in front of 'back drop’ cloth taped to building.”
At the end of the February hearing before this Judge on defendant’s motion to suppress physical evidence seized from defendant — apparently the backdrop and camera — defendant argued that his activities were an "artistic expression” protected by the First Amendment of the US Constitution and provisions of the NY Constitution, and sought dismissal of the complaint. The case was adjourned for briefing on the First Amendment issue and any other issues raised by the hearing.
The prosecutor and defendant have briefed the issues of *670 whether the photographs are constitutionally protected "expression” which cannot be impermissibly regulated; and whether the photographs are vendable merchandise within the scope of regulation by the charged Administrative Code § 20-453.
Defendant first urges that his photographic compositions ("the art or process of producing images * * * on film”, Webster’s Ninth New Collegiate Dictionary 885 [9th ed 1983]), and his "street performance” to obtain "festive” combinations of his cut-outs and backdrops with persons — in particular tourists — who seek photographs at a particular New York City location are protected "expression”, citing Massachusetts v Oakes (491 US 576, 591 [1989] [Brennan, J., dissenting opn] ["Photography, painting, and other two-dimensional forms of artistic reproduction * * * are plainly expressive activities that ordinarily qualify for First Amendment protection”]) and People v Milbry (140 Misc 2d 476 [Crim Ct, NY County 1988] [summarily rejecting any contention that "pictorial artwork” —floral pastel paintings in the style of Magritte in the case in question — was not covered by the State and Federal constitutional guarantees of freedom of expression]).
Before the court reaches any constitutional question, the much narrower issue of whether defendant’s activities are comprehended and regulable by the vendor licensing provisions must be answered.
ARE DEFENDANT’S ACTIVITIES COVERED BY THE CITED ADMINISTRATIVE CODE PROVISIONS?
Defendant urges that the unlicensed vending restrictions do not apply to his activities, since he is engaged in a "street performance”, and that for which he charges $5 (including but not limited to the photograph memorializing the performance) is neither goods or services, nor "part and parcel” of what a general vendor may "sell or lease” as provided in the statute.
Contrary to the prosecutor’s argument, defendant is not selling or vending a simple photography service on the street; he is not merely offering to take "snapshots of passersby”. From everything that can be gathered from the defense and prosecution descriptions of defendant’s activities, he does not simply point and snap a shutter on his own or anyone else’s camera at any location for any passerby willing to pay $5. Defendant is not involved in providing the equivalent of a shoe shine or sharpening shears.
*671 Further, the physical portion of what defendant sells — memorialization of his individually posed and stylized performances — is not easily comprehended in the Administrative Code definitions of "goods” or "wares”. Since the photographs do not exist until after defendant has completed his performance, and since they are all different, they are not "souvenir photographs” of the Statue of Liberty or the World Trade Center.
The photograph that is a part of any particular performance cannot be "displayed” or "spread out” for viewing by any potential customer because it does not exist. Indeed, the arresting officer apparently concedes that nothing was "displayed” or "spread out” for viewing or sale.
Defendant compares his activities to those of a street musician or mime, because these types of activities involve no "possession of wares” or "stock of goods on display”. In contrast to an artist selling his stock of artworks, defendant’s "photographs do not exist until a customer requests their creation * * * [t]hey are not on display, or even in his possession * * * [h]e is not their owner”. (Defendant’s brief, at 16; compare, People v Milbry, supra, at 480 [distinguishing a seller of original paintings from street musicians, who are only "hopeful of contributions, (and) are not, strictly speaking, selling anything and are not in possession of wares.”])
On this narrow nonconstitutional basis, the complaint must be dismissed. Defendant simply does not fit the definition of a "general vendor” contained in the statute (Administrative Code § 20-452), nor do his "products” fit the statutory language of "goods” or "services” (Administrative Code § 20-452).[4] There is no basis for the court to find probable or reasonable cause to believe that defendant was "peddling”, "hawking”, "selling” or otherwise "vending” any kind of "merchandise”, "goods” or "services”.
ARE DEFENDANT’S PHOTOGRAPHS "PROTECTED EXPRESSION”?
Assuming arguendo that the activity in this case fell within the Administrative Code framework, the court would also have to reject the arguments of the prosecutor in this case that, while some photographs or similar artwork may "qualify as artistic [and therefore protected] expression”, defendant’s *672 "snapshots of passersby willing to pay defendant five dollars” do not rise to the level of "art”. (Prosecutor’s brief, at 6.) There is no elucidation of this distinction by the prosecutor, nor any real discussion of why the prosecutor believes that, to be protected by the First Amendment, "expression” need be "art”.
Defendant urges that his endeavors are "protected expression” in two respects; he posits that he is simultaneously engaged in "street performance art” in composing and orchestrating the photographs in an entertaining manner, and in "graphic representational art”, in photographing these compositions. The prosecutor summarily dismisses the possibility that "art” or other protected expression might have dual character and purposes, and dual particularized messages; the prosecutor characterizes defendant’s claimed purposes and messages as "conflicting” in an unspecified way.
While defendant’s street performing and photographic endeavors may never be displayed in the Metropolitan or any other museum or formal forum for the display of "art”, defendant has clearly shown that his expressive purpose is, using backdrops and cut-outs, to (1) perform for any audience which wishes to see, hear and/or participate, and (2) produce and memorialize what he characterizes as a "festive” and "joy[pus]” figurative and literal "picture” of New York City for tourists and others, "in contrast to the cold, indifferent, rushing masses that often occupy our streets and heighten a visitor’s negative impression of our city.” (Defendant’s brief, at 18.)
There are two forms of expression, defendant urges, in his photographic recordation of "a unique artistic * * * confluence of * * * live photo subjects, whose actions are both directed and spontaneous * * * cut-outs and backdrops * * * of locations * * * and the sights and sounds of the city.”
Many might share the prosecutor’s lack of "artistic” appreciation for this particular expression and/or message; many might disdain defendant’s "performance” and "art” as "hokey” or "touristy” or worse. Nevertheless, neither defendant’s photographic endeavors, nor the sale of them,[5] are *673 outside the protection of either State or Federal First Amendment protection of expression.
Defendant’s activities, being "expression” (whether or not they are "art”), are constitutionally protected. (See, e.g., People v Milbry, 140 Misc 2d 476, supra.)
ARE THE ADMINISTRATIVE CODE PROVISIONS REASONABLE TIME, PLACE AND MANNER RESTRICTIONS?
Again assuming arguendo that defendant’s activities constitute a "service” and/or involve vending "goods” or "wares”, contrary to this court’s determination (supra), the regulation here challenged is also not reasonably limited as to the time, place and, in particular, the manner of defendant’s expression. To be reasonable, such restrictions must be content-neutral, " 'narrowly tailored to serve a significant governmental interest’ ”, and " 'leave open ample alternative channels for communication of the information.’ ” (Ward v Rock Against Racism, 491 US 781, 791 [1989]; Clark v Community for Creative Non-Violence, 468 US 288.) If the court were not dismissing this complaint on the narrower ground that the cited statutory provision is not applicable to the conduct here alleged, the complaint would also have to be dismissed on the broader constitutional ground.
The regulation here challenged is designed to meet the city’s compelling interest in regulating pedestrian traffic on crowded city streets. It is, defendant concedes, "content neutral” (defendant’s brief, at 6), but it is not, he argues, sufficiently narrowly tailored, and it does not leave open alternative methods for communication of his performance and photographic ideas.
The unlicensed vending regulation (Administrative Code *674 § 20-453; see, n 1, supra) requires vendors to annually obtain a license to lawfully sell goods or services on the street. A limited number of vendor’s licenses are issued, and they are distributed on a first-come, first-served basis for a fee of $200 for persons who file applications with photographs and meet other conditions apparently not in issue here. Defendant states, and the prosecutor doesn’t deny, that the waiting period for these licenses is now at least five years, that there is a "waiting list” to get on the "waiting list” for the licenses that do become available, and the Code provision thus amounts to an outright ban on his street performance which, by definition, requires the interplay of city street sights and sounds.
The licensing restriction in issue meets the first two prongs of reasonableness as to time and place restrictions on constitutionally protected expression. It is concededly content-neutral, and the court finds that it is sufficiently narrowly tailored, given conditions of public streets in the Times Square area at all hours of day and night, to serve a legitimate and substantial government interest of regulating and maintaining open pedestrian passage on crowded city thoroughfares.
However, the licensing restriction would appear to be unconstitutional in application to the case at bar because it effectively closes off the only method for defendant here to capture and communicate the idea he assertedly wishes to express — a performance and photographic memorialization, with street audience participation in a bustling street setting, of a "festive” and "joy[pus]” image of New York City for tourists and others, "in contrast to the cold, indifferent, rising masses that often occupy our streets and heighten a visitor’s negative impression of our city.” (Defendant’s brief, at 18.)
There is by definition only one place where this "performance event” can occur — on a city street, and apparently a particular city street or group of city streets in the Times Square area. While the city is not compelled to supply defendant with a "studio”, free of cost or otherwise, it cannot constitutionally deprive him, in a public place, of what he claims is an integral part of his expression. Defendant could not purchase the atmosphere of a particular Times Square area street corner at any price, in any event. If defendant cannot perform on the selected city sidewalks, and further cannot perform without a license, and if such a license is not and will not be available to him for at least five years, if ever, *675 and at a cost of $200 or more, defendant has no "alternative channels of communication”.
It is unavailing to argue, as the prosecutor does, that defendant can take his activities elsewhere. Particular streets are, in themselves, part of the statement defendant claims he is interested in making. An argument that defendant can sell his photographs elsewhere does not address the claims of defendant that he is trying to create a "festive” and "joyous” picture of people to enjoy at the time and to remember through photography. It is not just that defendant wants to use the street to sell his expressions, the street is part of that expression.
Accordingly, the vending license restriction on defendant’s street production and sale of his work both effectively and actually closes off the only method for defendant here to communicate the idea he assertedly wishes to express. Defendant is precluded from using the desired public location within any reasonable time because of the license unavailability, and he is deprived of what he claims are elements of his expression — street sights, sounds and atmosphere — a deprivation which might be compared to depriving certain types of artists of a paint and brush.
Were the charges here not being dismissed on the narrower ground that defendant’s alleged activities are not reasonably comprehended by the regulation of the unlicensed vendor’s Administrative Code provision, the complaint in this case would still have to be dismissed on the ground that, as applied to this defendant, this provision unconstitutionally closes off the only method for communication of the idea he wishes to express.

. In relevant part, the cited Code provision prohibits: "any individual * * * [from] act[ing] as a general vendor without having first obtained a license * * * except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter * * * to vend such without obtaining a license therefor.”
Administrative Code § 20-452 (b) defines a "general vendor” as: "[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services, including newspapers, periodicals, books, pamphlets or other similar written matter in a public space.”

. The charge of failing to display a tax certificate was dismissed by the arraignment court on October 25, 1993.

. Neither the "back drop cloth” nor any of the other photographic cutouts or "props”, mentioned in defendant’s briefing arguments, were presented to the court in the course of a suppression hearing held in February 1994, or otherwise. At the hearing, an arresting police officer credibly testified that there had been no photographs or "wares” or "goods” displayed, contrary to the allegations in the complaint and some of the arguments in the briefing. The court is relying solely upon representations of the prosecutor and counsel with respect to the existence and descriptions of items seized since none were produced in connection with the hearing.

. Were the court to find otherwise, it would be necessary to examine whether this Administrative Code provision is unconstitutionally vague as applied to the activities in question here.

. Expression "is protected even though it is carried in a form that is 'sold’ for profit * * * and even though it may involve a solicitation to purchase or otherwise pay or contribute money.” (Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 761 [1976] [restrictions on pharmaceutical "commercial speech” (advertising of prices of prescription drugs) *673 not outside protection of First and Fourteenth Amendments and not justified by State’s interest in maintaining professionalism of licensed pharmacists].) Parsing expression to apply different standard to the portions that constitute the "expression” from any solicitation, and applying different standards of constitutional protection to each, "would be both artificial and impractical.” (Riley v National Fedn. of Blind, 487 US 781, 796 [1988] [solicitation of funds for charity not subject to any regulation or licensing which required waiting for permission or license and disclosures].) Fees imposed as a prerequisite to the exercise of the right to communicate ideas on public sidewalks is an unconstitutional prior restraint on the freedom of expression. (Hull v Petrillo, 439 F2d 1184 [2d Cir 1971] [invalidating unlicensed vending statute applied to Black Panther newspaper where licensing dispensation resided in Mayor to license such persons as he deemed proper].)