OPINION OF THE COURT
Gerald Harris, J.
The defendant, Lawrence Saul, is charged with selling, on the street, playing cards without a general vendor’s license in violation of Administrative Code of the City of New York § 20-453. He moves to dismiss the complaint on two grounds, that the facts alleged are insufficient to make out the crime charged and that the United States and New York State Constitutions prohibit the State from requiring a license to sell art.
The defendant’s motion alleges that the playing cards bear the photographic images of military and political figures associated with the war in Iraq and, therefore, constitute “collectible war and military art created to memorialize Operation Iraqi Freedom and the Heroes of War.” Sellers of artwork, the defendant argues, are exempted from the licensing requirement because artwork communicates ideas and, as such, is entitled to the protections of the First Amendment and the free speech provisions of New York State Constitution, article I, § 8.
The first ground cited as requiring dismissal is without merit. Both the factual allegations of the complaint and the supporting deposition establish, if true, that the defendant was engaged in offering for sale more than 10 decks of playing cards displayed on a table behind which defendant stood for five minutes during which time he was seen exchanging the merchandise with one customer in return for currency. Defendant was not displaying the required license nor could he produce one when asked. These factual allegations provide an adequate basis for the court to infer, for pleading purposes, that defendant , was committing the crime of acting as an unlicensed general vendor.[1] (People v Gonzalez, 184 Misc 2d 262 [App Term, 1st Dept 2000]; People v Chen Ye, 179 Misc 2d 592 [Grim Ct, NY County 1999]; People v Montanez, 177 Misc 2d 506 [Crim Ct, NY County 1998].)
*262 Defendant’s second ground for dismissal requires a fuller analysis. Section 20-453 of the Administrative Code provides, in relevant part:
“It shall be unlawful for any individual to act as a general vendor without having first obtained a license . . . except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter ... to vend such without obtaining a license therefor.”
To the extent that the statute may place restrictions on the exercise of First Amendment rights, in that it regulates and licenses the use of public forums, it must further an important or substantial governmental interest, be narrowly drawn as to time, place and manner, be content-neutral and not cut off alternative channels of communication. (Schad v Borough of Mount Ephraim, 452 US 61 [1981]; Consolidated Edison Co. v Public Serv. Commn., 447 US 530 [1980]; Virginia State Bd. of Pharm. v Virginia Citizens Consumer Council, 425 US 748 [1976]; United States v O’Brien, 391 US 367 [1968].)
The court must now determine whether the application of the licensing requirement to this defendant, under the factual circumstances alleged, is violative of his constitutional rights. More specifically, if the playing cards sold by defendant are a form of written or visual expression, they are protected by the First Amendment and the general vendor’s licensing scheme, as applied to such expression, has been found invalid. (Bery v City of New York, 97 F3d 689 [2d Cir 1996], cert denied 520 US 1251 [1997]; cf. Lederman v Giuliani, 1998 WL 186753, 1998 US Dist LEXIS 5468 [SD NY 1998].)
Courts in New York have wrestled with the issue of whether visual art, as defendant so describes his stock, has First Amendment protection, and whether the provisions of Administrative Code § 20-453, as applied to artists, interfere with their constitutional rights. (See, People v Bissinger, 163 Misc 2d 667 [Grim Ct, NY County 1994] [street presentation coupled with photographic memorialization of the production protected].) Other issues addressed have included whether the exemption for sellers of books and other written material also applies to sellers of visual or nonverbal art and, if not, whether such distinction is violative of equal protection and whether Administrative Code § 20-453 is a narrowly drawn restriction which allows for alternative means of expression and, thus, not overly- *263 restrictive of First Amendment protection. (See, People v Gillings, 149 Misc 2d 950 [Grim Ct, NY County 1991] [words on albums fall within exception, music alone does not]; People v Milbry, 140 Misc 2d 476 [Grim Ct, NY County 1988] [although artwork is a constitutionally protected form of expression, it may be subjected to greater regulation than written expression].) All of these issues were resolved by the Second Circuit Court of Appeals in Bery v City of New York (supra, 97 F3d 689 [1996]).
In Bery, two groups of visual artists moved for a preliminary injunction against enforcement of the statute (Administrative Code § 20-452 et seq.) prohibiting them from exhibiting or selling their works at public places without a general vendor’s license. The District Court for the Southern District of New York denied the motion in a decision which found that the statute was content-neutral and violated neither the First nor Fourteenth Amendment, although its incidental effect was to restrict the sale of art on the sidewalks of New York. (Bery v City of New York, 906 F Supp 163 [SD NY 1995].)
In reversing the District Court’s denial of the preliminary injunction, the Second Circuit disapproved of the lower court’s finding that the sale of “apolitical paintings” involved “mere merchandise lacking in communicative concepts or ideas.” (Bery, supra, 97 F3d at 695 [internal quotation marks omitted].) The Second Circuit found that “[v]isual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection.” (Bery, supra, 97 F3d at 695; see also, People v Balmuth, 178 Misc 2d 958 [Crim Ct, NY County 1998].) The court also rejected the City’s argument that the appellants were free to display their artwork publicly without a license but simply could not sell it. The court held that the sale of protected materials is also protected and that right is not lost merely because compensation is received. (See also, Virginia State Bd. of Pharm. v Virginia Citizens Consumer Council, supra, 425 US 748 [1976]; Smith v California, 361 US 147 [1959]; Joseph Burstyn, Inc. v Wilson, 343 US 495 [1952].)
Having determined that the appellants’ artwork was entitled to full First Amendment protection, the Second Circuit next expressed doubt as to the District Court’s finding that the statute was content-neutral, pointing out that the law distinguished between written and visual expression in a manner that effectively bans one while subjecting the other to a more limited *264 form of regulation. However, the court found it unnecessary to determine the issue of content neutrality because even the application of a less restrictive yardstick than strict scrutiny, would require that the statute be invalidated as applied to the appellants.
The court held that the license requirement as it related to appellants was too sweeping to pass constitutional muster because it was not narrowly drawn and because there existed no alternative channels of communication for appellants’ expression. The regulation functioned as a de facto bar preventing visual artists from exhibiting and selling their art in public areas in New York since general vendor licenses are virtually impossible to obtain. The court further noted that the District Court was wrong to reject appellants’ equal protection argument given the statute’s disparate treatment of art and written material.
While the Second Circuit concluded that the District Court had abused its discretion in denying a preliminary injunction, that ruling does not end the inquiry in this case. As Bery recognized (at 696), “[cjourts must determine what constitutes expression within the ambit of the First Amendment and what does not.” As the court said, “[tjhis surely will prove difficult at times, but that difficulty does not warrant placing all visual expression in limbo outside the reach of the First Amendment’s protective arm. Courts have struggled with such issues in the past; that is not to say that decisions are impossible.” (Id. at 696.)
This court must now “struggle” with the issue of whether the defendant, when selling the playing cards, was engaged in a form of protected expression which would make the application of the license requirement of the General Vendors Law (Administrative Code § 20-452 et seq.) unconstitutional as to him.
Succinctly put, if the playing cards allegedly offered for sale by defendant are a form of written expression, defendant would not require a license by reason of the exemption contained within Administrative Code § 20-453. If the cards constitute nonverbal, artistic or visual expression then, applying the teaching of Bery, the license requirement of Administrative Code § 20-453 cannot be constitutionally enforced against defendant because such expression is equivalent to written expression and is entitled to the same First Amendment and equal protection rights. The court has examined the cards and finds that they fall within neither category of expression and, hence, their sale may be regulated pursuant to Administrative *265 Code § 20-453 without offense to the Federal or State Constitution. In most cases, the cards bear the photographic images of Iraqi military or political persons along with their names, titles or rank. In a few instances, only a black silhouette is shown with a name and title. The cards, in and of themselves, are not art. Nor do they depict works of art. There is nothing artistically noteworthy about the photographic images on the cards, nor do they constitute the seller’s own artistic endeavor. In sum, the cards do not qualify as art.
Applying the guideposts set out in Bery, the court has also assessed whether the visual images on the cards constitute a form of nonverbal expression which, like books, pamphlets or other writings, effectively communicate ideas, concepts or emotions. There is nothing about these cards which, reasonably interpreted, communicates ideas, opinions, emotions or a point of view. They do not glorify or condemn the war, demonize the characters, honor the coalition forces, hail war heroes or memorialize the fallen. The fact that each card contains a few words does not make it the equivalent of a book, pamphlet or other form of protected written expression. The words have no substance and serve only to identify the picture. Thus, these cards are distinguished from an ordinary deck of cards only by their manner of decoration. They are nothing more than the means to play a game and/or, at most a “collectible,”[2] the term used by defendant himself, although he appends the further, undeserved description “war and military art created to memorialize Operation Iraqi Freedom and the Heroes of War” (defendant’s brief at 7). Collectibles are readily distinguishable from art and, as mere merchandise, would not be entitled to constitutional protection. As collectibles, the cards may be likened to miniatures of the Statue of Liberty, which may be associated with the ideals of freedom and opportunity, but which are sold principally to tourists as mementos of a visit to New York and not as expressions of visual art. (See, Comedy III Prods., Inc. v Gary Saderup, Inc., 80 Cal Rptr 2d 464 [1998], review granted, op superseded 83 Cal Rptr 2d 533, 973 P2d 512 [1999], affd 25 Cal 4th 387, 21 P3d 797 [2001], cert denied 534 US 1078 [2002] [reproductions of an image made to be sold for profit, do not per se constitute speech]; People v Shapiro, 139 *266 Misc 2d 344 [Grim Ct, NY County 1988] [calendars and datebooks not protected form of written expression].) Similarly, sweaters bearing an American flag design may be evocative of patriotism but, when sold as items of fashion, do not acquire artistic value. (See, Al-Almin v City of New York, 979 F Supp 168 [ED NY 1997] [sale of perfumes and oils not sufficiently expressive to warrant First Amendment protection].)
The court finds that the cards cannot reasonably be characterized as art or artistic expression and are not entitled to constitutional protection. Accordingly, the defendant, in the context of this case, is neither an artist nor engaged in the communication of artistic or written expression and the regulation of his selling activities, on the sidewalks of the City, does not infringe his constitutional rights. His motion to dismiss the complaint is denied.
Other Branches of Defendant’s Motion
The defendant’s moving papers do not contain specific denials of the factual allegations accusing him of selling the cards without a license. Therefore, there are no disputed factual issues which require a hearing as to probable cause for his arrest and defendant’s Dunaway motion is denied. (People v Mendoza, 82 NY2d 415 [1993]; People v Omaro, 201 AD2d 324 [1st Dept 1994].)
Defendant’s Mapp motion, to suppress the physical evidence, is also denied without a hearing. There is no dispute that the cards were in plain sight on a public street and, thus, defendant can claim no expectation of privacy which was violated by their seizure. (People v Sutton, 91 AD2d 522 [1st Dept 1982] [mem]; People v DeLaCruz, 242 AD2d 410 [1st Dept 1997].) Furthermore, based upon the court’s finding of probable cause it is apparent that the seizure of the cards was incident to a lawful arrest. (People v De Santis, 46 NY2d 82 [1978]; People v Green, 42 NY2d 1023 [1977]; People v Nieves, 36 NY2d 396 [1975].)
The use of prior convictions or bad acts to cross-examine the defendant is referred to the trial court for resolution.

. A general vendor is defined as “[a] person who hawks, peddles, sells, leases or offers to sell or lease, at retail, goods or services, including newspapers, periodicals, books, pamphlets or other similar written material in a public space. (Administrative Code § 20-452 [b].)

. “Collectible” is defined by Webster’s New World Dictionary of the American Language (2d college ed), as “suitable for collecting, as by a hobbyist; any of a class of old things, but not antiques, that people collect as a hobby; a thing of no great intrinsic value.”