[Civ. No. 32355. First Dist., Div. Four. Mar. 1, 1974.]

SAN FRANCISCO STREET ARTISTS GUILD, et al.,
Plaintiffs and Appellants, v.
DONALD SCOTT, as Chief of Police, etc., et al.,
Defendants and Respondents.

## COUNSEL

Charles C. Marson, Paul N. Halvonik and Robert Kantor for Plaintiffs and Appellants.

Thomas M. O'Connor, City Attorney, and Milton H. Mares, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**DEVINE, J.***—The question in this case is whether an ordinance of the City and County of San Francisco, which forbids unlicensed peddling on the sidewalks, is constitutional on its face or in its application. Plaintiffs are individuals who declare in their separate affidavits in support of their complaint for injunction that they are artists, and a guild of craftsmen and musicians of which they are members. The lawsuit does not affect the musicians, however. They perform their art on the sidewalks without the requirement of a permit, but without monetary recompense save that donated at the scene.

The articles which the several individual plaintiffs wish to sell include paintings and sculptural representations of tiny plants, dolls which are representations or caricatures of public figures, paintings and sculptures, crocheted clothing, macrames made of beads, jewels and feathers, and similar objects vaguely described in the affidavits. It is alleged in the complaint, which is for declaratory relief and for injunction, that the individual plaintiffs wish to display and sell their art on the sidewalks where their presence would not interfere with pedestrian or vehicular traffic, but that peddlers' permits have been denied to them despite repeated applications and appeals to the board of permit appeals, the highest source of administrative remedy. It is alleged that appellants are subject to arrest and pretrial incarceration should they proceed, without permit, to display and to sell objects which they have created, and that arrests have

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

been made in such cases. At the trial it appeared that permits to plaintiffs and to others in their class have been denied without exception (although occasionally, by a "moratorium," the police have not demanded a permit for the operation).

The contentions of plaintiffs are (1) that the licensing ordinance is violative of plaintiffs' First Amendment rights of free expression of ideas, and (2) that it is unconstitutional in that it sets no standards whatsoever to circumscribe the discretion of public officers. The trial court found that the sale of art goods on the streets is not protected by the First Amendment and that the provisions of the Charter of San Francisco and the Municipal Code do not violate the constitutional protections for adequate standards.[1] Accordingly, the court ordered judgment for respondents and dissolved a preliminary injunction theretofore issued. Appeal followed.

## I. FIRST AMENDMENT

■ We sustain the conclusion of the trial judge that First Amendment rights are not involved. Let it be noted at the beginning that Police Code section 869, the penal law, does not purport to regulate conduct or expression in any form whatever in places other than public streets. Those cases cited by appellants, involving the police power to control various forms of expression within theaters, stores, and similar places, are not relevant, e.g., *Burton* v. *Municipal Court,* 68 Cal.2d 684 [68 Cal.Rptr. 721, 441 P.2d 281]; *Superior Films* v. *Dept. of Education,* 346 U.S. 587 [98 L.Ed. 329, 74 S.Ct. 286]; *Smith* v. *California,* 361 U.S. 147 [4 L.Ed.2d 205, 80 S.Ct. 215]. Rather, the principle applies that the place for the conduct of a private business is upon private property, for there is no vested right to do business upon the public streets. (*In re Mares,* 75 Cal. App.2d 798, 801 [171 P.2d 762]; *Pittsford* v. *City of Los Angeles,* 50 Cal.App.2d 25, 32 [122 P.2d 535]; *Stephenson* v. *Binford,* 287 U.S. 251, 264 [77 L.Ed. 288, 294, 53 S.Ct. 181, 87 A.L.R. 721].) Of course, if a "business" is that of disseminating ideas or information as in *Weaver* v. *Jordan,* 64 Cal.2d 235 [49 Cal.Rptr. 537, 411 P.2d 289] (initiative measure undertaking to ban the business of home subscription television held unconstitutional); *Follett* v. *McCormick,* 321 U.S. 573 [88 L.Ed. 938, 64 S.Ct. 717, 152 A.L.R. 317] and *Murdock* v. *Pennsylvania,* 319 U.S. 105 [87 L.Ed. 1292, 63 S.Ct. 870, 146 A.L.R. 81] (ordinances imposing license tax on book agents, as applied to evangelist distributing religious tracts

---

[1]The subject of equal protection of the laws is barely mentioned in the complaint, but is not discussed in appellants' brief on appeal. The point is deemed to be waived. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, p. 4391.)

and obtaining living from money received therefor, held unconstitutional); *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 265 [11 L.Ed.2d 686, 697, 84 S.Ct. 710, 95 A.L.R.3d 1412] (constitutional guaranties of freedom of speech and of the press held applicable to paid advertisement); and *Ginzburg* v. *United States,* 383 U.S. 463 [16 L.Ed.2d 31, 86 S.Ct. 942] (no weight ascribed to the fact that petitioners profited from the sale of pornographic publications, although conviction of mailing thereof was affirmed), the fact that there is also a commercial aspect to the affair does not destroy First Amendment guaranties. Likewise, the expression of political, economic, religious or social tenets in a symbolic way, for example by parades (*Shuttlesworth* v. *Birmingham,* 394 U.S. 147 [22 L.Ed.2d 162, 89 S.Ct. 935]; *People* v. *Duffy,* 79 Cal.App.2d Supp. 875, 877 [179 P.2d 876]), or by wearing of armbands (*Tinker* v. *Des Moines School Dist.* 393 U.S. 503 [21 L.Ed.2d 731, 89 S.Ct. 733]), is subject to but limited control. But the sale of the described artifacts does not reach this high level of expression, even though the items sold may have about them something of the personality of their creators. A good deal of the merchandise sold in department stores, small shops, art galleries, and other commercial establishments is of artistic value and communicates to the purchaser the maker's concepts over and above whatever utilitarian value the articles may have. To hold that First Amendment rights attach to the kind of merchandising described in the pleadings would be to open large segments of public property to private enterprise, because where First Amendment rights are present controls must be held to a minimum.

The mercantile element of the projected enterprises (although it would be unimportant in cases really involving free press or free speech) is significant here. In *Breard* v. *Alexandria,* 341 U.S. 622, 641 [95 L.Ed. 1233, 1247, 71 S.Ct. 920, 35 A.L.R.2d 335], it is said of a contention that an ordinance was an abridgment of freedom of speech and the press: "Only the press or oral advocates of ideas could urge this point. It was not open to the solicitors for gadgets or brushes." Even in the dissent by Justices Black and Douglas, it is said of the ordinance (which forbade door-to-door soliciting of subscribers for magazines and periodicals without prior consent of owners or occupants) that the ordinance could constitutionally be applied to a "merchant" who goes from door to door "selling pots" (p. 650 [95 L.Ed. at p. 1252]). Although we do not mean to equate appellants' creations with gadgets, brushes or pots, we do not find them to be so likely to communicate expression of the type of ideas held sacred by the First Amendment as to vest them with such broad rights as are held by pamphleteers or purveyors of newspapers. And although the appellants present before us no doubt are sincerely devoted to their arts, the widening of

First Amendment protection to the vending of products of variegated and uncertain character might well invite applicants for licenses who would be possessed of the acumen associated with the followers of Mercury rather than applicants who are true artists illuminated by the aura of Apollo.

Appellants have cited no authority for the enlargement of freedom of expression, accompanied by commercial advantage, for which they contend.

## II. Asserted Lack of Standards

■ Appellants say that section 869 of the San Francisco Police Code, which reads: "It shall be unlawful for any person to peddle goods, wares of merchandise, or any article, material or substance, of whatsoever kind on public streets, unless duly licensed so to do," is unconstitutional on its face and as applied. The challenge to constitutionality on the face of the ordinance is contained in a bare statement in appellants' brief and is unsupported by argument or citation of authorities, except the decisions of *Sail'er Inn, Inc.* v. *Kirby,* 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], in which Business and Professions Code section 25656, which prohibits women from tending bar except when they are licensees, wives of licensees, or singly or with their husbands sole shareholders of a corporation holding the license, was held unconstitutional on its face as arbitrarily foreclosing persons' rights to pursue a lawful occupation; and *Purdy & Fitzpatrick* v. *State of California,* 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194], in which Labor Code section 1850, which limited the employment of aliens on public works, was held void on its face as arbitrarily foreclosing the right of employment and denial of the equal protection laws. Section 869 does not on its face purport to enact an outright prohibition against any occupation, but does forbid certain kinds of selling without a license.

■ Now for the application of the statute and of the underlying licensing provisions, which are: (1) section 3.537 of the Charter of the City and County of San Francisco, which reads: "The chief of police may refuse to issue any permit that is subject to police department investigation and issuance, if it shall appear that the character of the business or the applicant requesting such permit does not warrant the issuance thereof, or he may revoke any such permit as soon as it shall appear that the business or calling of the person to whom it was granted is conducted in a disorderly or improper manner, or that the place in which the business is conducted or maintained is not a proper or suitable place in which to conduct or

maintain such business or calling"; and (2) section 26 of the Municipal Code, which provides: "In the granting or denying of any permit, or the revoking or the refusing to revoke any permit, the granting or revoking power may take into consideration the effect of the proposed business or calling upon surrounding property and upon its residents, and inhabitants thereof; and in granting or denying said permit, or revoking or refusing to revoke a permit, may exercise its sound discretion as to whether said permit should be granted, transferred, denied or revoked."

Appellants state in their brief that permits simply are not granted to street artisans, and that therefore section 869 has been applied effectively to extinguish a lawful occupation. The findings of fact made by the trial judge do not support this contention. The judge found that of the ten individual plaintiffs two had been selling their creations on the public streets without peddling permits, as had other members of the San Francisco Street Artists Guild; that six of the witnesses, who were members of the guild, had not made formal applications for permits because they were not being issued for the areas in which they desired to sell their goods, that is, Victoria Park, Ghirardelli Square, The Cannery, Fisherman's Wharf and Union Square; that certain of the plaintiffs and witnesses were informed by police officers that permits in those particular areas were not being granted; that not one of the aforementioned plaintiffs or witnesses had either completed formal applications or initiated administrative appellate procedure which was available; that two persons, Key and Conant (neither was an individual plaintiff but both were members of the guild), had made formal application for peddlers' permits, and upon denial had appealed unsuccessfully to the board of permit appeals. There is nothing in the record to show what the evidence was relating to Mr. Conant. As to the application of Mr. Key, whose case was reviewed by the board of permit appeals and about whose application we have some information, there is in the record his affidavit that he applied for a permit to sell art work (beads) in front of Victoria Park and in front of Union Square, and that the permits were denied by the police. The affidavit evidently was in support of the application for injunction. There is also a statement by his counsel before the board of permit appeals that the sidewalk adjacent to Victoria Park, where he wished to operate, is 25 feet in width and that he wishes to sell on a blanket about 4 feet wide; wherefore, there should be no traffic flow problem. But this is all that is in the record. Whether Mr. Key appeared as a witness before the court is not shown (the reporter's transcript is not included in the record), nor is he one of the individual plaintiffs.

There is no justification for concluding upon the record before us that

applications for permits would be denied by the chief of police no matter what location was involved, or that the board of permit appeals would sustain wholesale denial of such permits. In the testimony of the police officer who represented the chief at the hearing before the board of permit appeals, it was stated that the denials had been because of traffic problems. Although this was related to one particular area, Fisherman's Wharf, it is reasonable to conclude, unless a case were made to the contrary, that the chief of police had regard for the free flow of pedestrian traffic and has denied permits where this flow would be impeded. Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of the public and property, the prime purpose to which streets are dedicated. (*Schneider* v. *State,* 308 U.S. 147 [84 L.Ed. 155, 60 S.Ct. 146]; *People* v. *Amdur,* 123 Cal.App.2d Supp. 951, 959 [267 P.2d 445]; *Cox* v. *New Hampshire,* 312 U.S. 569 [85 L.Ed. 1049, 61 S.Ct. 762, 133 A.L.R. 1396]; *Vanderhurst* v. *Tholcke,* 113 Cal. 147 [45 P. 266].)

■ Delegation of power to a municipal officer to refuse permits to businesses which are subject to police regulation is constitutional, and it is presumed that such authorities have not acted arbitrarily but in the exercise of sound discretion. (*Iscoff* v. *Police Commission,* 222 Cal.App.2d 395, 401 [35 Cal.Rptr. 189]; *In re Holmes,* 187 Cal. 640, 646-647 [203 P. 398]; *In re Petersen,* 51 Cal.2d 177, 185 [331 P.2d 24, 77 A.L.R.2d 1291], app. den., 360 U.S. 314 [3 L.Ed.2d 1259, 79 S.Ct. 1294].) The granting of discretionary power not restricted by specific standards to confer or deny licenses is to be upheld where the licensed activity, because of its potentially objectionable character (e.g., traffic obstruction), may be regulated or restricted to certain localities. (*In re Petersen, supra,* at p. 184.) In *People* v. *Amdur,* 123 Cal.App.2d Supp. 951 [267 P.2d 445] (referred to approvingly in *In re Petersen,* at p. 185), this principle was applied in a case involving a permit for a temporary obstruction of a sidewalk. (In *Amdur* there was a remand because evidence had been excluded that the ordinance had been applied in a discriminatory manner; as said in footnote 1, equal protection is not an issue on this appeal.)

Despite the presumption that the officer will duly perform his duty, an abuse of discretion may be shown and relief obtained in the courts. (*In re Petersen, supra,* at p. 185.)

Declaratory relief is not an appropriate method for judicial review of administrative decisions (*Hill* v. *City of Manhattan Beach,* 6 Cal.3d 279, 287 [98 Cal.Rptr. 785, 491 P.2d 369]), and although proceedings for declaratory relief may under appropriate circumstances be construed as

a petition for a writ of mandate where there has been an abuse of discretion (Code Civ. Proc., § 1094.5; *Hill* v. *City of Manhattan Beach, supra; Hostetter* v. *Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230]), the meager and incomplete record before us does not justify a conclusion that there was an abuse of such discretion.

The judgment is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 22, 1974. Mosk, J., was of the opinion that the petition should be granted.