Robert BERY, James Albert Harris, Anne Reiss, Ricardo Antonio Pascual, Artists for Creative Expression on the Sidewalks of New York City, Plaintiffs,

v.

CITY OF NEW YORK, Rudolph Giuliani, Mayor, City of New York, William Bratton, Chief, New York City Police Department, Robert Morgenthau, District Attorney–New York County, Richard A. Brown, District Attorney–Queens County, William L. Murphy, District Attorney–Richmond County, Charles H. Hynes, District Attorney–Kings County, Robert F. Johnson, District Attorney–Bronx County, Alfred C. Cerullo III, Commissioner of New York City Department of Consumer Affairs, New York City Department of Consumer Affairs, Henry J. Stern, Commissioner, New York City Department of Parks and Recreation, New York City Department of Parks and Recreation, Marilyn Gelber, Commissioner of the Environmental Control Board of the City of New York, Environmental Control Board of the City of New York, Defendants.

Robert LEDERMAN, Jodi Bogus, Knut Masco, Alexis Portilla, and Arthur Robbins, Plaintiffs,

v.

The CITY OF NEW YORK, Rudolph Giuliani, Mayor of the City of New York, in his individual and official capacities, The New York City Police Department, William Bratton, Commissioner of the New York City Police Department, in his individual and official capacities, Department of Consumer Affairs of the City of New York, Alfred C. Cerullo, III, Commissioner of Department of Consumer Affairs of the City of New York, in his individual and official capacities, Environmental Control Board of the City of New York, and Anne J. McCarthy, Executive Director of the Environmental Control Board of the City of New York, in her individual and official capacities, Defendants.

No. 94 Civ. 4253 (MGC), 94 Civ. 7216 (MGC).

United States District Court, S.D. New York.

Oct. 26, 1995.

enforcement against them of the New York City General Vendors Law (Administrative Code of the City of New York § 20–452 et seq.) on the grounds that the application of the ordinance to their activities violates their rights to freedom of expression and equal protection of the laws under the First and Fourteenth Amendments to the Constitution. Plaintiffs do not contend that their paintings are in any respect political, but rather take the position that all works of fine art are forms of expression which fall under the First Amendment's protection of "speech," and that that protection is absolute.

Art is enormously important in advancing civilization. How the flowering of art is best encouraged in our society is not an issue for the court. These cases do not involve censorship of any kind. There is no suggestion that, in enacting the ordinance, the City Council was motivated by any animus against artists or that the sale of art was a targeted activity. The only question is whether the incidental effect on artists of a general local regulation of all street sales violates the Constitution of the United States. For the reasons discussed below, plaintiffs' motions are denied.

Noah A. Kinigstein, Carol Novack, New York City, for plaintiffs Robert Bery, et al.

Dewey Ballantine by Wayne A. Cross, Randall Fox, New York City (Volunteer Lawyers for the Arts, of Counsel), for plaintiffs Robert Lederman, et al.

Paul A. Crotty by Robin Binder, Gabriel Taussig, Corporation Counsel of City of New York, New York City, for defendants.

CEDARBAUM, District Judge.

Does a content-neutral municipal ordinance of general application violate the First and Fourteenth Amendments because it incidentally restricts the sale of art on the sidewalks of New York City? Plaintiffs in these related cases are artists who sell their original paintings on public sidewalks and an artists' advocacy organization. They move for a preliminary injunction prohibiting the

## Background

The New York City General Vendors Law (the "Ordinance") provides:

> It shall be unlawful for any individual to act as a general vendor without having first obtained a license in accordance with the provisions of this subchapter, except that it shall be lawful for a general vendor who hawks, peddles, sells or offers to sell, at retail, only newspapers, periodicals, books, pamphlets or other similar written matter, but no other items required to be licensed by any other provision of this code, to vend such without obtaining a license therefor.

Admin.Code of the City of N.Y. § 20–453. The term "general vendor" is defined as:

> A person who hawks, peddles, sells, leases or offers to sell or lease at retail, goods or services, including newspapers, periodicals,

books, pamphlets or other similar written matter in a public space.

*Id.* § 20–452(b).

■ Amendment I of the Constitution provides: "Congress shall make no law ... abridging the freedom of speech, or of the press...." [1]

Plaintiffs are artists who sell or desire to sell their original works on public sidewalks. Most of the plaintiffs have been arrested or threatened with arrest, have received summonses, have been fined, and have had their works confiscated for violating the Ordinance.[2]

The City has imposed a limit of 853 on the number of licenses to be issued under the Ordinance.[3] *See* N.Y.City Admin.Code § 20–459; Binder Decl. ¶ 11. There are between 500 and 5,000 applicants on the waiting list to obtain licenses at any given time, and the wait to obtain one is expected to be between three and five years. (Richard Schrader Aff. ¶¶ 7, 9 (Ex. D to Lederman Supp.Aff.)) None of the plaintiffs in any of the actions appears to be on the waiting list at the present time.[4]

In addition to their First Amendment attack on the Ordinance, plaintiffs contend that the exemption of sellers of "newspapers, periodicals, books, pamphlets or other similar written matter" from the licensing requirement deprives artists of the equal protection of the laws and thus violates that clause of the Fourteenth Amendment.

*Standard for Preliminary Injunction*

■ To obtain a preliminary injunction, plaintiffs must show that they are "likely to suffer possible irreparable injury" and "either (1) a likelihood of success on the merits of [their] case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [their] favor." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (citation and internal quotation marks omitted). In these cases, the two prongs of the threshold showing required for injunctive relief merge into one. Since violation of constitutional rights is the irreparable injury asserted, *see Mitchell v. Cuomo,* 748 F.2d 804 (2d Cir.1984), in order to show irreparable injury, plaintiffs must show likelihood of success on the merits.

*Does the Ordinance Violate Plaintiffs' First Amendment Rights?*

There are few cases which discuss whether the First Amendment prohibits application of a general vending licensing scheme to the sale of works of fine art on public property. New York state courts have decided several cases under the Ordinance. The New York City Criminal Court dismissed a charge of violating the Ordinance against Robert Bery, one of the plaintiffs in these actions. *See People v. Bery,* N.Y.L.J., May 20, 1994, at 22.

---

1. The First Amendment's protection of freedom of speech and freedom of the press applies to the states through the Fourteenth Amendment. *Schneider v. Irvington,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

2. One plaintiff, Anne Reiss, has not sold her work on the public sidewalks, but alleges that she would like to sell her work on the public sidewalks, but has not done so because she fears the consequences of doing so.

3. N.Y.Gen.Bus.L. § 32(1) provides that New York residents who are veterans of any war or who have served in the United States armed forces overseas "shall have the right to hawk, peddle, vend and sell goods, wares or merchandise or solicit trade upon the streets and highways within the county of his or her residence, as the case may be, or if such county is embraced wholly by a city, within such city, by procuring a license for that purpose to be issued as herein provided." In order to comply with this statute,

the Department of Consumer Affairs ("DCA") has adopted a policy that any veteran who wishes to obtain a license will be issued one regardless of the 853 license limit. As of October 21, 1994, 340 licenses had been issued to veterans over and above the limit. Thus, the actual number of licenses in effect is approximately 1,193. (*See* Binder Decl. ¶ 11 n. 7.)

4. Some plaintiffs state that when they inquired about applying for a license, they were told by the DCA that the waiting list was closed and they should inquire at a later date. (Bogus Aff. ¶ 6; Lederman Aff. ¶ 12.) Others state that they were told by DCA employees that artists were not required to have licenses. (Smolinsky Aff. ¶ 3; Robbins Aff. ¶ 5.) Another states that she didn't apply for a license because licensed vendors and other artists told her that licenses for artists were unobtainable. (Portilla Aff. ¶ 4.)

The court concluded that "the licensing requirement is inapplicable to this case based on the First Amendment rights of the defendant. Not only did the defendant's work express a clear political viewpoint but, in addition, some of his work included the written word...." *Id.*[5] In another case, the New York City Criminal Court held that the Ordinance did not violate the equal protection rights of an artist who sold his own paintings of floral pastels in the style of René Magritte on the city sidewalks. *See People v. Milbry,* 140 Misc.2d 476, 530 N.Y.S.2d 928 (N.Y.City Crim.Ct.1988). In *Milbry,* the court held that under the test set forth in *United States v. O'Brien,* 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968), there is no First Amendment bar to the inclusion of artists in a general licensing requirement for street vendors, and also held that the exemption for sellers of written matter did not deprive sellers of paintings of equal protection of the laws under the Fourteenth Amendment. *Milbry,* 530 N.Y.S.2d at 930–31.

One other state court has dealt with the issue of First Amendment protection for the street sale of art in a case involving facts similar to those presented in these cases. In *San Francisco Street Artists Guild v. Scott,* 37 Cal.App.3d 667, 112 Cal.Rptr. 502 (1974), artists and craftspeople who wished to sell works (including paintings and sculptures) of their own creation on the sidewalks of San Francisco were denied the licenses required by a city ordinance. The California Court of Appeal found that the works were not "so likely to communicate expression of the type of ideas held sacred by the First Amendment as to vest them with such broad rights as are held by pamphleteers or purveyors of newspapers." *Id.* 112 Cal.Rptr. at 505. The court therefore refused to "enlarge" the First Amendment to protect the commercial activity of selling arts and crafts on public sidewalks. *Id.*

Plaintiffs argue that *Milbry* and *San Francisco Street Artists* are not persuasive because there was no indication in those cases that artists were unable to obtain licenses, whereas in this case, plaintiffs allege that they are unable to obtain licenses. (Lederman Pl.'s Reply Mem., at 3–4.)

The text of the First Amendment explicitly refers to "speech" and "the press." The precise nature of First Amendment protection for painting and sculpture with no verbal elements has not been addressed by the federal courts. Although several opinions include generalized statements concerning the protection of artistic works by the First Amendment, *see Miller v. California,* 413 U.S. 15, 34, 93 S.Ct. 2607, 2620, 37 L.Ed.2d 419 (1973) ("The First Amendment protects works which, taken as a whole, have serious literary, artistic, political, or scientific value, regardless of whether the government or a majority of the people approve of the ideas these works represent."); *Serra v. United States Gen. Servs. Admin.,* 847 F.2d 1045, 1048 (2d Cir.1988); *Piarowski v. Illinois Community College,* 759 F.2d 625, 628 (7th Cir.1985), those cases did not present the issues raised here.

There is some expressive content in works of fine art, just as there is in works of applied or decorative art. Both the silversmith and the sculptor whose works are for sale are seeking to reach others. But the development of First Amendment protection for symbolic speech has evolved primarily from judicial concern about government censorship. With respect to regulations which have no purpose or effect to censor content, it is much more difficult to identify the extent, if any, of First Amendment protection for activity which is not verbal. While in certain circumstances works of art may be "protected" by the First Amendment, it does not follow that the City violates the First Amendment whenever it regulates activity in public areas and incidentally frustrates the desires of some artists to sell their work in such places. In general, "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 567, 111 S.Ct. 2456, 2460–61, 115 L.Ed.2d 504

---

**5.** Bery does not claim in these cases that his art conveys a political message.

(1991) (quoting *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968)).

Plaintiffs do not distinguish between content-based and content-neutral regulation. Most of the cases cited by plaintiffs which mention First Amendment protection for artistic expression involved challenges to censorship, i.e., content-based regulations or government action. *See Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Piarowski v. Illinois Community College*, 759 F.2d 625 (7th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). The only case offered by plaintiffs in support of First Amendment protection for non-verbal artistic expression which involved a content-neutral municipal regulation is *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The plaintiffs in that case challenged a New York City Ordinance that required any musical performer who performed in the Central Park bandshell to use sound equipment and a sound technician provided by the City. The Supreme Court rejected the attack on the constitutionality of the regulation.

■ The distinction between content-based and content-neutral regulation is important in First Amendment jurisprudence. Content-based regulation is subject to strict scrutiny because a regulation that discriminates on the basis of content is a "red flag" indicating that the government intends to censor a particular message. Content-neutral regulations, on the other hand, are subjected to a more lenient level of scrutiny. The Supreme Court teaches that a content-neutral government regulation will be upheld if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on First Amendment freedoms is no greater than essential to the furtherance of that interest. *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968).

■ There is no question that regulation of activities in public areas is within the City's constitutional power. The City's inter-est in keeping the public streets free of congestion for the convenience and safety of its citizens is an "important or substantial" interest. The regulation furthers that interest and is unrelated to the suppression of free expression. Regulations that burden speech incidentally are "no greater than essential, and therefore [are] permissible under *O'Brien*, so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 688–89, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985); *see also Ward v. Rock Against Racism*, 491 U.S. at 801, 109 S.Ct. at 2759.

The limit of 853 licenses was established when the City Council enacted Local Law No. 50 of 1979, which amended Section 20–459(a) of the Administrative Code. In enacting this law, the City Council found that "a limit on the total number of general vendor licenses should be established, because the business of general vending is intimately connected with problems of congestion on streets and sidewalks, and because an increase in the number of general vendors would worsen those conditions." L.L. 50/1979, § 1. The City's goal in setting the license limit in 1979 was to prevent an increase in congestion. Thus, the incidental restriction on artists' freedom of expression caused by the license limit is permissible under *O'Brien* since the City's goal of keeping the public sidewalks free of congestion would be achieved less effectively in the absence of the regulation.

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), cited by plaintiffs, demonstrates a concern about government censorship, which is not present in these cases. *City of Lakewood* invalidated a newsrack licensing ordinance which gave municipal officials considerable discretion to deny licenses. Although that case involved a regulation that was content-neutral on its face, the concern that licensing officials would abuse their discretion to deny licenses on the basis of content was the reason for the conclusion that the First Amendment had been violated. *See City of Lakewood*, 486 U.S. at 763–64,

108 S.Ct. at 2147–48. A licensing ordinance that limited the discretion of officials to license newsstands and newsracks was upheld in *Graff v. City of Chicago*, 9 F.3d 1309, 1317–19 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994). There is no evidence that the licenses required by the Ordinance are issued on any but a "first-come, first-served" basis. *See People v. Milbry*, 140 Misc.2d 476, 530 N.Y.S.2d 928, 930 (N.Y.City Crim.Ct.1988). Thus, there is no threat of censorship through the abuse of discretion by licensing officials.

Plaintiffs also point to the recent Supreme Court decision in *City of Ladue v. Gilleo*, —— U.S. ——, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) for the proposition that a content-neutral regulation may violate the First Amendment by prohibiting "too much protected speech." *Id.* at ——, 114 S.Ct. at 2043, 129 L.Ed.2d at 44. The municipal ordinance in *Ladue* was not a general regulation. It was explicitly limited to signs, a medium of verbal expression, and it prohibited the display of signs on private residential property. Thus, the ordinance directly limited the right of citizens to "speak" on their own property. *Ladue* at ——, 114 S.Ct. at 2046, 129 L.Ed.2d at 49. *Cf. City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (upholding ordinance prohibiting the posting of signs on public property).

Plaintiffs argue that the cases at bar are analogous to *Ladue* because the practical effect of the Ordinance is to completely prohibit the sale of art on the public streets and sidewalks. Because the *Ladue* ordinance was directed at speech and applied to messages displayed on private property, the *Ladue* ordinance was unlike the Ordinance of New York City in critical respects. *Ladue* does not change the First Amendment analysis established by *O'Brien*. Unlike the plaintiffs in *Ladue*, New York City's street artists are entirely free to sell their works on their own property.

Plaintiffs do rely on some cases that involved content-neutral general regulations with an incidental effect on expression. Plaintiffs cite cases that hold that the sale of merchandise that bears a message expressing the seller's beliefs is a protected activity under the First Amendment. *See Gaudiya Vaishnava Soc'y v. City of San Francisco*, 952 F.2d 1059 (9th Cir.1991), *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992); *One World One Family Now v. City of Key West*, 852 F.Supp. 1005, 1008 (S.D.Fla.1994) (granting preliminary injunction on ground that plaintiffs demonstrated substantial likelihood that "the sale of message-bearing T-shirts will be found to be fully protected First Amendment activity"); *People v. Krebs*, 54 Misc.2d 578, 282 N.Y.S.2d 996 (N.Y.City Crim.Ct.1967). The expression in those cases, however, consisted of words. Moreover, the words stated political or religious views. Items bearing words that express political or religious views are much closer to the heartland of First Amendment protection of "speech" than the apolitical paintings in these cases.

When a regulation is content-neutral, courts engage in a balancing test to determine whether the impact on freedom of expression outweighs the government's interest in the regulation. *See generally* Laurence H. Tribe, American Constitutional Law § 12–23 (2d ed. 1988); Geoffrey R. Stone, Content–Neutral Restrictions, 54 U.Chi. L.Rev. 46 (1987). The government interest required to justify a general content-neutral regulation which incidentally interferes with nonverbal expression need not be as substantial as the governmental interest required for direct interference with "pure speech." *East Hartford Educ. Ass'n v. Board of Educ. of East Hartford*, 562 F.2d 838, 858 (2d Cir. 1977) (teacher's refusal to wear a tie as a view of life and society was a vague message which was "close to the 'conduct' end of the 'speech-conduct' continuum"). Although some art may be very close to "pure speech," *see, e.g., Sefick v. City of Chicago*, 485 F.Supp. 644 (N.D.Ill.1979) (display of life-size plaster figures with tape recorded dialogue satirizing mayor's snow removal efforts), plaintiffs' art does not carry either words or the particularized social and political messages upon which the First Amendment places special value. *See Close v. Lederle*, 424 F.2d 988, 989–90 (1st Cir.) (refusing to

extend cases dealing with students' rights to hear unpopular speakers to artist's claim that he had a right to exhibit works in University building on ground that those cases "involve[d] a medium and subject matter entitled to greater protection than plaintiff's art"), *cert. denied,* 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970); *San Francisco Street Artists Guild v. Scott,* 37 Cal.App.3d 667, 112 Cal.Rptr. 502, 505 (1974).

▪ Plaintiffs have not shown that the general content-neutral Ordinance as it incidentally affects artists who wish to sell their apolitical paintings on the sidewalks of New York unconstitutionally interferes with their freedom of speech under the First and Fourteenth Amendments.

*Equal Protection*

▪ When a statute neither impinges on a fundamental right, such as freedom of speech, nor uses a suspect classification, such as race or gender, it will not be found to violate the Equal Protection Clause of the Fourteenth Amendment as long as it bears a rational relation to a legitimate governmental purpose. *Regan v. Taxation With Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001–02, 76 L.Ed.2d 129 (1983); *Story v. Green,* 978 F.2d 60, 63–64 (2d Cir. 1992) (applying rational basis standard to statute that repealed exemption of veterans from N.Y. General Business Law).

▪ Since, as discussed above, the Ordinance does not impermissibly impinge upon plaintiffs' First Amendment rights, its different treatment of the sale of written matter and the sale of art need only meet rational basis scrutiny. The Ordinance exempts only sellers of "newspapers, periodicals, books, pamphlets or other similar written matter." Such written matter is the heartland of the First Amendment.[6] Because art is farther from the core than the written word, the City's decision to exempt sellers of written matter cannot be seen as irrational. Indeed, it shows the rational desire of the City Council to avoid the possibility of violating the

First Amendment. Therefore, the City's vending ordinance does not violate the Equal Protection Clause of the Fourteenth Amendment.

*Conclusion*

Without likelihood of success on the merits of their constitutional challenge, plaintiffs do not show irreparable harm. Accordingly, for the reasons discussed above, plaintiffs' motions for a preliminary injunction are denied.

SO ORDERED.

---

6. "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I.